287 So.2d 647 (1973)
Dottie W. SNOW, Plaintiff-Appellant,
v.
CITY OF SHREVEPORT et al., Defendants-Appellees.
No. 12164.
Court of Appeal of Louisiana, Second Circuit.
November 13, 1973.
Rehearing Denied January 9, 1974.
Writ Refused March 1, 1974.
*648 Wilkinson, Carmody & Peatross by Samuel W. Caverlee, Shreveport, for plaintiffappellant.
John Gallagher, Roland J. Achee, Ray A. Barlow by Ray A. Barlow, Shreveport, for defendants-appellees.
Before AYRES, BOLIN and PRICE, JJ.
En Banc. Rehearing Denied January 9, 1974.
BOLIN, Judge.
Plaintiff, a 74-year-old widow, sued the City of Shreveport and the Caddo Parish School Board for damages for injuries she received when she fell on a sidewalk paralleling and adjoining property of the School Board. The School Board filed an exception of no cause of action which was sustained; this judgment having become final the liability of the Board is not an issue on appeal. For written reasons the trial judge found plaintiff guilty of contributory negligence in failing to observe the defect in the sidewalk which caused her to fall. From judgment dismissing plaintiff's demands, she appeals. For reasons hereinafter expressed we reverse this ruling and render judgment in favor of plaintiff.
The accident occurred November 23, 1971, on a sidewalk adjoining Missouri Street in the City of Shreveport. Although plaintiff lived in that neighborhood she testified she seldom walked along the sidewalk in question. However, having been notified she had won a turkey at a nearby A & P grocery store, plaintiff, accompanied by her 16-year-old grandson, Jerry Mace, started walking toward the grocery store. She said she knew the sidewalks in that general area were in bad condition but had not paid any particular attention to the one on which she was walking. As she reached a point near a large sycamore tree she stumbled and fell, *649 causing the personal injuries made the basis of this suit.
The witnesses described the weather as being "drizzling and damp". Examination of the sidewalk showed it had cracked, causing a triangular-shaped piece of the concrete surface to sink, resulting in a rise beyond the cracked portion of over two inches. This defective condition was covered by mud and also by leaves from the sycamore tree.
After Mrs. Snow fell she sat down on the sidewalk and leaned back against the tree while her grandson went for help. Jerry located his older brother who came to the scene and summoned an ambulance which transported plaintiff to the Confederate Memorial hospital in Shreveport, where she was examined and X-rayed. The X-rays revealed her left kneecap was badly fractured, necessitating surgical removal of the patella. She remained in a cast for some time. The only medical evidence as to her condition was a letter from Dr. Thomas A. Norris, orthopedic surgeon of Shreveport, who examined plaintiff and said she had reached maximum recovery with a residual permanent disability of 35 to 40% of the leg as a whole.
The evidence is uncontradicted that the sidewalk upon which plaintiff was walking at the time she fell was constructed in the "early twenties". A tree expert testified the cracking in the sidewalk was due to the roots from the sycamore tree and that the condition as it existed at the time of the accident had probably been the same for approximately seven years preceding the date of the accident.
The Shreveport city engineer, an employee of the City for 21 years, testified the municipality had no system of inspecting the sidewalks to determine their suitability for pedestrian traffic; that the City made an investigation only when a complaint was received.
Essential to plaintiff's recovery are answers to several questions:
(1) Could the condition of the sidewalk be classified as a dangerous defect or a trap; or was it trivial or slight?
(2) Was the City on notice, either actual or constructive, of the defect?
(3) Was the plaintiff contributorily negligent?
We shall discuss the first two questions together.
Admittedly there was no actual notice on the part of the City. However, it is equally clear to us that the City had constructive notice of the defect. Since the cracking, causing change of over two inches in the level of the sidewalk, had been in existence for at least seven years, the city could have discovered the defect by the slightest type of inspection.
In Robinson v. City of Alexandria (La. App.2d Cir. 1937) 174 So. 681, the court had this to say:
". . . There had never been any inspection made of this walk by any of the city officials. In fact, the city has no one whose duty it is to inspect the condition of the streets and walks in the city. It depends upon every employee of the city to report any defect they might occasionally see, and on the public in general to report such defects. We are convinced the city officials did not have actual knowledge of the condition of this walk, due to the negligence in not at least occasionally inspecting a walk which was nearly twenty years old. Actual knowledge, however, is not necessary in a case such as this where the defect had existed for many years. Knowledge is imputed to the city. . . ."
The lower court did not pass on the issue of whether the defect in the sidewalk was of such a nature as to render the city liable to a pedestrian in the absence of contributory negligence. From our study of the record, particularly the photographs, *650 we find the area of the sidewalk where plaintiff fell was in a dangerous condition. While there is some conflict in the testimony as to whether or not the depression in the sidewalk was covered by leaves, we find no evidence to contradict the testimony of plaintiff that it was.
Liability in this case is based upon Louisiana Civil Code Article 2315 as interpreted by our appellate courts. A municipality has an obligation to maintain public sidewalks paralleling its streets in a reasonably safe condition for pedestrians using them. This obligation encompasses the duty to locate and repair defects that are likely to cause injury to those lawfully using the sidewalks.
There was some effort made in this case by the municipality to exonerate itself because of certain city ordinances which place an obligation on the adjoining landowner to repair, maintain and keep clean the sidewalks. We find no merit in this contention. First, it is appropriate to point out that the liability of the adjoining property owner was decided when the exception of no cause of action filed by Caddo Parish School Board was sustained. No appeal was taken from that ruling and the issue of the Board's liability is no longer before us. Additionally, the municipal ordinances merely establish the legal relationship between the city and the adjoining property owner. Tort liability against the adjoining property owner results only when the adjoining property owner actually created or caused the defect involved. St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964); Breaux v. Leidenheimer (La.App. 4 Cir. 1967writs refused 1968), 204 So.2d 59, and cases cited therein. See also Toppi v. Arbour (La.App. 1 Cir. 1960), 119 So.2d 621, where the court held a statute, imposing upon an adjoining property owner the responsibility for repair and maintenance of the sidewalks fronting on his property, was merely legislative recognition of the principle that a municipality may hold the adjoining property owner financially responsible for the cost of repairing the sidewalks but did not relieve the city of its primary obligation toward the public to maintain sidewalks in a safe condition.
We find ourselves in disagreement with the conclusion reached by the trial judge that plaintiff was guilty of contributory negligence. Even though Mrs. Snow knew the sidewalks in that vicinity were old and generally in poor condition, she had no reason to believe she would step in a hole concealed by leaves. A similar situation existed in Bustamente v. City of New Orleans (La.App. 4 Cir. 1965), 175 So.2d 404, where the court held:
"Mrs. Bustamente was not guilty of negligence merely because she went upon the brick sidewalk. Although it was generally in poor condition, any person exercising a reasonable amount of caution should have been able to traverse it with complete safety. Mrs. Bustamente was careful to look where she was walking, and this was all the law required of her. Had not the hole been concealed from view, she would certainly have noticed it. The hole, which was invisible, constituted a trap or was in the nature of a trap which could not have been reasonably anticipated by a pedestrian. The injuries resulted therefrom and appellant is liable. . . ."
We conclude the City of Shreveport has failed to prove plaintiff was guilty of contributory negligence.
Left for consideration is the question of quantum. Fortunately, plaintiff was not as seriously disabled as might have been expected considering her age, the type of surgery and the medical treatment she underwent. She was a Medicare patient at the Confederate Memorial Medical Center. Confederate was put on notice and did not intervene and consequently plaintiff is no longer liable to that institution for any medical treatment. The only item of special damage is the sum of $35 for ambulance service.
Mrs. Snow remained in the hospital seven days following the surgical removal of *651 the kneecap. She was placed in a cylinder cast which was removed approximately two weeks after the operation and a new cast was applied which remained on her leg for several weeks thereafter. She experienced some difficulty in having the cast removed, which was attributable in part to incorrect procedures followed by the hospital personnel. After her discharge from the out-patient clinic of Confederate Memorial, plaintiff continued to suffer intermittent pain and limitation of motion. Dr. Norris was of the opinion she would have a permanent limp.
Taking all of the evidence into consideration, and being fully cognizant that each case must be decided upon its own peculiar facts, and in an effort to do justice to all parties, we find an award to plaintiff of $15,035 would be fair and reasonable.
For the reasons assigned the judgment of the lower court is reversed and set aside and it is now ordered there be judgment in favor of Dottie W. Snow and against the City of Shreveport in the sum of Fifteen Thousand, Thirty-five and no/100 Dollars ($15,035.00), together with legal interest thereon from judicial demand until paid, and all costs of these proceedings.