375 So.2d 722 (1979)
Avery F. BROUSSARD
v.
PARISH OF JEFFERSON et al.
No. 9800.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 1979.
Writ Refused November 1, 1979.
*723 Wayne M. LeBlanc, Metairie, for plaintiff-appellant.
Harry Lee, Parish Atty., and Clayton J. Borne, III, Asst. Parish Atty., Gretna, for defendants-appellees.
Before SAMUEL, LEMMON and SCHOTT, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against the Parish of Jefferson and its liability insurer, Fireman's Fund Insurance Company, for injuries he sustained when he rode his bicycle into an open and uncovered drain hole allegedly obscured by weeds and grass. Based on an absence of coverage, Fireman's Fund was dismissed from the suit by summary judgment. The Parish of Jefferson answered, denying liability and pleading contributory negligence.
After a trial on the merits, there was judgment in favor of the defendant Parish, dismissing the suit. Plaintiff has appealed. In this court he seeks only reversal of the judgment on the merits. He makes no complaint regarding the summary judgment and that matter is not before us.
On June 26, 1974 plaintiff, then 69 or 70 years old, was riding his bicycle in an easterly direction in the 4200 block of Eureka Avenue in Metairie, Louisiana. He contends, and defendant argues he has not proved, several small children ran in front of his bicycle causing him to swerve sharply to his right to avoid hitting them. As a result, the front wheel of the bicycle went into the open drain and he pitched forward, striking his face on the iron and cement edge of the drain hole.
Plaintiff's principal witness was Gregory Fant, an employee of South Central Bell Telephone Company. Fant was installing *724 telephones in the area of the 4200 block of Eureka. He had been working in this area frequently for approximately six months prior to the accident in suit. He stated he had noticed the uncovered drain in February, 1974 and identified several photographs showing the open drain with surrounding weeds and grass, which photographs, he further stated, accurately depicted the scene at the time of the accident. The photographs referred to are in evidence. They show an uncovered, open and deep drain extending approximately 2 feet into the paved curb and a slightly greater distance than that into the paved street. Thick high weeds and grass are growing inside of the curb and many of those weeds have fallen over the curb and into the street, partially obscuring the open drain.
When Fant arrived at the scene on the day of the accident he saw plaintiff holding a bloody handkerchief. The front of the bicycle was in the drain hole with the back wheel sticking out of that hole. Plaintiff appeared to be dazed and four or five children were running around taunting him. He administered some aid to plaintiff, after which he removed the bicycle from the hole and found a pair of gold wire rimmed glasses, which had been smashed.
Perhaps the most controversial part of Fant's testimony is his description of the behavior and statement of a lady who came on the scene approximately two minutes after he arrived. When the woman saw plaintiff's condition, she became quite excited. Fant explained to her what had happened, and she allegedly stated she had called the Parish of Jefferson two weeks before about the cover missing from the drain hole. This portion of Fant's testimony will be discussed in more detail later.
Plaintiff also subpoenaed the records of any grass-cutting operations by the Parish in the area of the 4200 block of Eureka. The evidence thus produced shows the Parish had engaged in grass-cutting operations on Houma Boulevard between Veteran's Boulevard and West Metairie (in the area of the accident) after Fant first observed the missing cover in February and before plaintiff's accident. Plaintiff contends these grass-cutting operations show the Parish had employees who knew or should have known of the absence of the drain cover.
The defendant argues plaintiff only proved children were in the area at the time he was discovered by Mr. Fant, and did not prove the accident was caused by his swerving to avoid striking the children. The only evidence to this effect, according to the defendant, is a statement made in plaintiff's discovery deposition, a statement he did not make at the trial. In addition, defendant contends the testimony of the woman who remarked to Fant that she had notified the Parish of the defect shortly before the accident was inadmissible because it was not part of the res gestae.
The applicable law is set forth in the case of LeBlanc v. Parish of East Baton Rouge,[1] as follows:
"It is well settled that a municipality is liable for defects in its streets when it is shown that such defects are unusually hazardous or trap-like, even to a person using ordinary care, and that the municipality had either actual or constructive notice of the defect and failed to correct it within a reasonable time. Kinard v. City of Jennings, 184 So.2d 570 (La.App. 3rd Cir. 1966). There is no fixed rule for determining what constitutes a dangerous hazard. The test generally applied is whether the accident would have happened if the pedestrian or motorist were exercising ordinary care. Sapir v. Sewerage & Water Board of City of New Orleans, 127 So.2d 283 (La.App. 4th Cir. 1961). Further, a motorist using ordinary care has a right to presume that the street is free of any unusual hazards [and] that it is safe for usual and ordinary traffic. Smith v. State, 87 So.2d 380 (La.App. 1st Cir. 1956)."
In LeBlanc, the court held that a manhole cover protruding up into the street for "a couple of months or more, maybe longer *725 than that" was sufficient to impute constructive knowledge to the defendant Parish and to warrant a conclusion that the Parish was negligent in failing to discover and correct it.[2]
In the present case, the accident occurred on June 26, 1974 and the testimony of Fant establishes that the defective, open drain existed, and continued to exist, since at least the preceding February, a time period of about four months. As a defect such as a large uncovered drain hole should have been discovered by the Parish within that time, we hold it had constructive knowledge of its existence. This holding makes it unnecessary for us to consider the question of whether Fant's testimony relative to the woman who told him she had notified the Parish of the open drain two weeks before the accident is admissible as a part of the res gestae or inadmissible hearsay. Insofar as knowledge on the part of the Parish is concerned, constructive knowledge alone is sufficient to warrant liability.
Defendant contends plaintiff was guilty of contributory negligence in that he did not prove he wore his glasses at the time of the accident and because the record does not establish he took evasive action to avoid striking children. It argues the only admissible evidence shows that children were in the area, but not necessarily in the path of plaintiff's bicycle.
At the trial, plaintiff had extreme difficulty testifying because of his age and physical disabilities. His testimony was disjointed and at times unrelated to the questions asked. Accordingly, his attorney attempted to introduce a discovery deposition of plaintiff, which had been taken when he was more mentally alert and able to testify with a greater degree of clarity. Stating he was not prepared to make a ruling thereon, the trial judge permitted the deposition to be put in evidence subject to a defendant objection.
Code of Civil Procedure Article 1450(3)(c) provides the deposition of a witness, whether or not he is a party to the suit, may be used by any party for any purpose if the court finds the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment. Because of the plaintiff's age and the severity of the injuries sustained by him, we conclude the deposition can be used in lieu of, or in addition to, plaintiff's trial testimony.
The deposition, at which defendant counsel was present and had an opportunity to cross examine, demonstrates clearly that while plaintiff was riding his bicycle on the street, he was required to make an evasive maneuver to avoid striking some children who suddenly ran into his path, and that maneuver caused him to run into the open drain. The deposition includes testimony that the hole into which plaintiff's bicycle fell was obscured by grass, plaintiff had his glasses on at the time of the accident, he did not see the hole before he hit it, and although he had ridden his bicycle on that street many times before the accident, he had never noticed the "open culvert".
Fant's testimony establishes uncut grass and weeds were in the area of the hole and that he had removed eye glasses from the hole into which plaintiff's bicycle had fallen. Plaintiff's wife also testified as to the weeds and grass and that she had to take plaintiff's eye glasses to be repaired after the accident.
On the basis of the evidence which the trial court considered, or should have considered, we conclude plaintiff was not guilty of contributory negligence in that he was operating his bicycle with the use of his eye glasses and fell into the open, uncovered hole because he attempted to avoid striking young children who had suddenly run into his path.

QUANTUM
Testimony relative to plaintiff's injuries resulting from the accident was given by Dr. Anthony Scalco, an ear, nose and *726 throat specialist, who was trained to do head and neck surgery, Dr. Joseph Almerico, a dentist, Dr. Beverly Vasconcellos, a chiropractor, and Mrs. Doris Broussard, plaintiff's wife.
Dr. Scalco testified: He first saw plaintiff on the day of the accident, June 26, 1974. The injuries were extensive. Plaintiff had multiple lacerations and skin abrasions about his face, a fracture of the nasal bones, and a severe fracture involving almost the entire middle of his face which went clear through below the eyes. It was a Le Fort type fracture, free from the rest of the bony framework. Mrs. Broussard informed him that her husband was in poor general health with heart and other problems, that his family felt he probably would not be able to survive any type of extensive surgery and therefore the family was obligated to refuse any of the routine methods of handling this problem. Dr. Scalco stated this precipitated some problems which would tend to be permanent. He was able to push plaintiff's nose "somewhat" back into its proper position, but the facial fractures were too extensive to do anything of that type. Facial x-rays disclosed the Le Fort type fracture and a minimally displaced nasal fracture. There were no mandibulary fractures or fractures of the jaw bone. Plaintiff was again seen on June 27, 28, July 9, August 1, and September 26, 1974. Although he was not discharged at that time, plaintiff was not seen again as he had moved out of the area.
Dr. Scalco further testified that if the family had permitted surgical procedures to correct the damage to the face, it would have been more comfortable and less painful for plaintiff. However, as of September 26, plaintiff was doing "exceptionally well" and his external healing was "unbelievably good". He complained of blurred vision which the doctor concluded was due to swelling from the accident. The doctor was unable to conclude whether the headaches of which plaintiff complained were the result of the accident or a result of high blood pressure. He did state that pain and anxiety do increase blood pressure.
Dr. Alemrico testified: Plaintiff had been his dental patient for 13 years. The doctor saw him on July 18, 1974, following the accident. Plaintiff's immediate concern was inability to eat satisfactorily. Examination showed failure of the upper and lower teeth to occlude properly. On April 18, 1975, plaintiff returned relative to proper healing of the jaw. Complete mouth x-rays were taken and he was referred to Dr. Clay Hunley, an oral surgeon, for consultation. It was Dr. Hunley's opinion that proper healing had taken place and the problem now confronting plaintiff was to restore him to proper occlusion. To accomplish this Dr. Alemrico constructed or prepared to construct crowns and maxillary and mandibulary partial dentures. Plaintiff did not lose any teeth as a direct result of the accident, although it is possible some teeth removed within the first year after the accident could have been related to the accident.
Dr. Vasconcellos, the chiropractor, saw plaintiff four days after the accident. He complained of muscle-skeletal problems and the chiropractor found severe spasms of the cervical region and of the paravertebral musculature. Plaintiff was in extreme pain. His face was so badly bruised he was unrecognizable. He was treated with ultrasound and diathermy. Plaintiff had been a patient of the chiropractor for some time prior to the accident and the frequency of his visits increased substantially following the accident. He received treatment almost daily through August 13, 1974.
Plaintiff's wife testified: Her husband was retired prior to the accident and his activities included riding a bicycle, walking for exercise and playing cards. Following the accident he was no longer able to ride his bicycle and was very depressed. He is now a more excitable person. His principal continuing disability resulting from the accident is that his teeth do not occlude properly which interferes with his ability to chew. Prior to the accident her husband was under treatment for high blood pressure. Although Mrs. Broussard testified her husband was in reasonably good physical condition prior to the accident, this does not correspond with the information which *727 she gave to Dr. Scalco. As can be seen from Dr. Scalco's testimony, the family refused surgical procedures, which would have alleviated some of his pain and suffering, because he was in generally poor health and they felt he would not survive surgery. This information related by the family to Dr. Scalco shows plaintiff was not in good health prior to the accident.
Given the severity of the injuries sustained by plaintiff, we conclude a general award of $20,000 for pain and suffering, plus $1,748.75 for proven medical expenses,[3] would be proper under all of the facts and circumstances.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of plaintiff, Avery F. Broussard, and against the defendant, the Parish of Jefferson, in the full sum of $21,748.75, together with legal interest thereon from date of judicial demand until paid. All costs in both courts are to be paid by the defendant Parish. In addition, expert fees are assessed as costs in the following amounts: Dr. Anthony Scalco, $100; Dr. Joseph A. Alemrico, $100; and Dr. Beverly Vasconcellos, $75.
REVERSED AND RENDERED.
NOTES
[1] La.App., 271 So.2d 634, at page 636.
[2] See also Arnold v. City-Parish Government, La.App., 290 So.2d 763; Snow v. City of Shreveport, La.App., 287 So.2d 647.
[3] These expenses were itemized as follows: East Jefferson Hospital  $73; Dr. Scalco  $105; Dr. Fornet  $35; Dr. Vasconcellos  $125; Dr. Bernard (eye doctor)  $65; Dr. Almerico$1,322; Prescriptions$23.75.