REGAN, Judge.
The plaintiffs, Mr. and Mrs. James Pitts, filed this suit against the defendant, the City of New Orleans, endeavoring to recover the sum of $5,172.50, representing damages for personal injuries and medical expenses which they assert were incurred as the result of the negligence of the defendant in failing to properly inspect and repair steps servicing a passenger bridge, the collapse of which caused Mrs. Pitts to sustain the injuries which form the subject of this litigation.
The defendant answered and denied the foregoing accusations of negligence and in the alternative, it asserted that it had neither actual nor constructive notice of the defective steps and that the plaintiff was guilty of contributory negligence in that she failed to exercise that degree of care which the circumstances required.
Following a trial on the merits, judgment was rendered in favor of the plaintiffs in the amount of $1,672.00, and from that judgment, the defendant has prosecuted this appeal.
The record discloses that the accident occurred on March 31, 1966, when the plaintiff was endeavoring to walk up the steps leading to a wooden footbridge which traverses the Melpomene Canal near the intersection of Melpomene and South White Streets in the City of New Orleans. She successfully negotiated the first step, but as she placed her weight on the second step, it collapsed, causing her to fall and injure her hands and knees. A photograph introduced into evidence revealed that the step had in fact collapsed and that the step immediately above it was inclined on a somewhat slanted angle.
The plaintiff resided across the street from this bridge, and crossed it daily in order to escort one of her children from school. The only other crossing points which she could have utilized were located at South Broad Street and at South Dupre Street, both of which are approximately three hundred yards from the footbridge in question.
Mrs. Eleanora Harris, the owner of a grocery store located across the street from the bridge, testified that the steps and the handrailings on the bridge were occasionally in bad condition and that she had telephoned the City to notify it of these conditions several times prior to the date of this accident. She also recounted that oc *766 casionally people would fall on the steps because of their defective condition.
The only witness offered by the defendant was Charles Puissegur, a supervisor employed in the Street Department in the First District of the City of New Orleans. This witness testified that on the 9th or 10th of December, 1965, he personally supervised the bridge, and that the steps were fastened back in position, the railings were nailed and painted, and peat gravel was placed in Melpomene Street. ' He related that he walked over/the bridge to make sure that everything was solid and suitable for pedestrians. He laboriously asserted that he checked the steps, that they appeared to be in perfect condition and that there was no deterioration of the steps. He insisted that since the steps were “one hundred percent creosote” they could not deteriorate in the period of time between his inspection in December of 1965, and the plaintiff’s accident on March 31, 1966. •
On cross examination, however, this witness testified that when he visited the bridge in December, he did not see the steps but that his attention was focused upon effecting repairs to the street. He stated that he did not notice the steps in particular but all he knew was that they needed repairs. However, the work sheets kept by the Department of Streets for a permanent record of work done shows clearly that the steps were not repaired in December. On the contrary, the only work done to the bridge was to repair and paint the handrailings attached thereto.
 With respect to the liability of a municipal corporation for defects in streets and sidewalks, it is the generally established rule that a municipal corporation cannot be held liable to a pedestrian for injuries incurred as the result of a defective sidewalk where the municipality did not have either actual or constructive notice.[1] However, a higher degree of duty has been placed upon the City of New Orleans with respect to wooden footbridges and gutter crossings which are, of necessity, subject to decay. Under these circumstances, it is the duty of the City to inspect such structures periodically, and failure to do so constitutes negligence on the City’s part. This doctrine was enunciated by the Supreme Court in Smith v. City of New Orleans [2] wherein the organ for the court rationalized that:
“The law imposes upon the city of New Orleans the mandatory duty of keeping its streets, and the bridges and coverings over gutters and ditches which form parts of the streets, in such condition as not to endanger the lives and limbs of those who use them; and, as such bridges and coverings, when made of wood, are subject to rapid decay, the proper discharge of that duty requires that they should be inspected periodically, and that the ascertainment of their dangerous condition should not be left either to chance observation or to resulting accidents; hence the failure to make such inspection is negligence, for which the city may be held liable, in damages, to one sustaining injury thereby.”
Hence, the City’s duty with respect to wooden footbridges and gutter coverings is to periodically inspect and to maintain them. The first duty was obviously breached in this case. The City’s only witness testified that the steps and bridges are not inspected on a regular basis, but that they are only inspected in a haphazard fashion or when a complaint is received. Assuming arguendo that the City’s witness is worthy of belief, the only inspection of which he testified is a perfunctory walking across the bridge and steps. There was no careful inspection, and it is quite unlikely that he even paid any attention to the steps at all. It is also a fact that the steps were not properly maintained. The photograph introduced into evidence reveals that the *767 steps were at best deteriorated, and the uncontradicted testimony of the plaintiff’s witnesses is that they were in this condition prior to the accident.
Mrs. Harris testified she had seen numerous people fall on the steps and that she had telephoned the City in order to have the condition remedied. This testimony stands uncontradicted with the exception of the statement of the City’s witness to the effect that he received no telephone calls prior to the accident complaining of the condition of the steps. However, it would have been a simple matter for the City to introduce its records of telephone calls, which it asserts it maintains, in order to establish that no such calls were in fact received. Needless to say, however, no records were introduced, and it can only be presumed that such records would have been damaging to the City’s case.
Thus, insofar as the negligence of the City is concerned, we are convinced that it had the benefit of both constructive and actual notice in this case. We can only conclude that it was negligent in failing to properly inspect and maintain the steps which caused the plaintiff’s injury.
The City also contends, in the alternative, that the plaintiff was guilty of contributory negligence because she walked over the defective step. The record, to reiterate, discloses that the plaintiff traversed the bridge daily. Her testimony establishes that some of the steps were solid looking and some were not. The step in question was solid looking, but unfortunately it collapsed. Of course, a pedestrian must use reasonable care for her own safety; however, it cannot be said that she is negligent as a matter of law because she used a route which appeared safe to the eye but which eventually in retrospect turned out to be unsafe. The plaintiff cannot be held to have anticipated such a collapse.[3]
The defendant contends that the plaintiff was also guilty of contributory negligence when she failed to use the handrail which was provided. Proof of contributory negligence rests upon the party alleging it.[4] While the City had the opportunity to do so, it did not even ask the plaintiff whether she used or did not use the handrail. Even assuming that her failure to use the handrail would be contributory negligence, the record is devoid of any evidence with respect to such non-use. Therefore, this defense is of no avail to the defendant.[5]
The plaintiff proved her damages by virtue of her own testimony and that of Dr. R. W. Soboloff. The amount of the award is not contested on appeal, and an extended discussion of the plaintiff’s injuries is, therefore, not warranted.
For the foregoing reasons, the judgment of the lower court is affirmed.
The defendant is to pay all costs incurred herein.
AFFIRMED.

. Carsey v. City of New Orleans, La.App., 181 So. 819 (1938).

. 135 La. 980, 66 So. 319 (1914).

. See Hebert v. City of New Orleans, La. App., 163 So. 425 (1935); Brantley v. City of Baton Rouge, La.App., 98 So.2d 824 (1958).

. See Howard v. Great American Indemnity Co., La.App., 36 So.2d 881 (1948).

. There is some argument on appeal regarding the failure of an eyewitness to the accident to appear, with the consequent adverse presumption to the plaintiff’s case because of the witness’s nonappearance, the record indicates that it was stipulated that no such adverse presumption would be made, since the witness was subpoenaed and apparently could not be served. The sheriff’s return does not indicate why the witness was not served, and the City attorney was silent, as he was when other stipulations were made. Therefore, we can only conclude that he acquiesced in the stipulation.