573 So.2d 1274 (1991)
Sandra Holmes LeBLANC
v.
The CITY OF NEW ORLEANS.
No. 90-CA-0389.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
Writ Denied March 22, 1991.
Christopher J. Bruno, Bruno & Bruno, New Orleans, for plaintiff.
Okla Jones, II, City Atty., William D. Aaron, Chief Deputy City Atty., Val K. Scheurich, III, Deputy City Atty., Angelique A. Reed, Asst. City Atty., New Orleans, for defendant.
Before ARMSTRONG, PLOTKIN and BECKER, JJ.
ARMSTRONG, Judge.
Plaintiff, Sandra LeBlanc appeals the trial court's judgment finding that the City of New Orleans is not liable for injuries she sustained when she slipped and fell in a *1275 pothole located in the vicinity of 424 Bourbon Street.
On December 31, 1987 at approximately 9:00 p.m., Ms. Sandra Holmes LeBlanc, who was in the French Quarter for the New Year's festivities, began walking with her companions up the lake side of Bourbon Street towards Canal Street. As she approached the 400 block of Bourbon Street she and her friends decided to cross the street to get something to eat at the Seaport Cajun Cafe' located at 424 Bourbon Street. As Ms. LeBlanc neared the river side sidewalk of Bourbon Street, her right foot stepped into an open hole located between the brick and the asphalt causing her to twist and severely injure her right knee. Ms. LeBlanc was assisted by the manager of the Seaport Cajun Cafe', Ms. Toni Reyes, whose property faced the site of the hole. Ms. Reyes indicated that Ms. LeBlanc was not the first person to fall into the hole.
Ms. LeBlanc had immediate pain after her fall. When the pain grew unbearable, Ms. LeBlanc sought medical attention from Dr. John Montz, an orthopaedist. After a conservative period of treatment and therapy, Dr. Montz decided to do arthroscopic surgery on Ms. LeBlanc. On April 14, 1988, Ms. LeBlanc was admitted to Doctor's Hospital on an out-patient basis and underwent an arthroscopic evaluation wherein Dr. Montz found a tear in the lateral meniscus, which he removed, and some early arthritic changes that he referred to as chondromalacia, cartilage softening about the undersurface of her knee cap along the lateral femoralcondyla. Dr. Montz assigned a five per cent permanent impairment to the lower extremity of Ms. LeBlanc and prescribed continued therapy and visitations with him. In August of 1988 he discharged Ms. LeBlanc with restrictions of bending, climbing and running.
On September 26, 1988, a trial was held and the trial court found that the cause of Ms. LeBlanc's knee injury was her stepping into a hole in front of the Seaport Cafe'. Additionally, it found that because of the knee injury, she had to undergo arthroscopic surgery to repair a torn meniscus. The trial court also found that the plaintiff suffered an aggravation of a back condition which was healed. Further, the trial court found that Ms. LeBlanc suffered a residual disability from the fall. It concluded that the City was not liable for plaintiff's fall because it did not have notice that the defective condition existed.
Ms. LeBlanc contends that it was error for the trial court to find that the City of New Orleans did not have actual knowledge of the pothole.
La.R.S. 9:2800 limits the liability of a public entity for damages caused by the condition of things within its care and custody. With the exception of buildings, in order for a public entity to be liable it must have actual or constructive notice of the particular vice or defect. Ms. LeBlanc insists that the testimony of Ms. Toni Reyes, who alleged she had reported the hole to the City prior to Ms. LeBlanc's fall, established actual notice. She argues that it was error for the trial court to disregard the testimony of an independent witness.
In her testimony Ms. Reyes described the hole as being very large and she claims to have observed it since 1986-87 but it was only severe for six months. Ms. Reyes claims to have made two calls regarding the holes. She testified that she reported the holes to the Streets Department in both December of 1987 and January of 1988, after the accident. Ms. Reyes testified that she did not know to whom she spoke and that she did not give her name to the person processing her complaint. She identified, by photograph, the hole Ms. LeBlanc fell in as being identical to the hole she reported in January of 1988. Unfortunately, the photograph of the hole did not include a measuring stick that would allow us an accurate way to surmise its width and depth. However, due to the shape of the hole, long and narrow, and the fact that standard-size bricks aligned the hole, we do have some concept of its length. When Ms. LeBlanc was asked about the depth of the hole she stated that the hole was filled with water and although she was wearing 2 inch heels when she stepped into it, the water went up to her ankle.
*1276 The City offered the testimony of City employees, Karen E. Stemley and Arnold Sumler. Ms. Stemley's testimony consisted of her reading records from the Streets Department for the years of 1987 and 1988. There was no record of Ms. Reyes' call. Ms. LeBlanc argues that Ms. Stemley could not testify as to whether someone in her office had failed to record a complaint in 1987 because she did not begin her employment with the Streets Department until February of 1988. However, the testimony Ms. Stemley gave concerning the time prior to February 1988 was all based on the records kept in the department.
The only recorded complaint was on February 1, 1988 by Tim Paris. In this case Armond Sumler was assigned as surveyor. Mr. Sumler was asked to tell the court about his investigation, when he went to the site, and when he received the complaint. Mr. Sumler responded:
A: Okay. The complaint was received from the complaint office February 1. I inspected it February 5th. Okay. And I put on the complaint an inspector's remark as fall street, vertical curbs.
Q: What does that mean?
A: Well, we try to categorize the streets. Streets with curbs, streets without curbs, concrete streets, asphalt streets, whatever. So when they put it into the computer, they have an idea of what kind of street we're dealing with.
Mr. Sumler was also asked if the pothole was a severe hole. He stated:
A: Not when I inspected it. I am not going to say later if it was a severe hole, it would have been written on the complaint.
As a result of the complaint made by Tim Paris on February 1, 1988, the hole was inspected on February 5th and repaired on February 9, 1988. When Ms. Stemley was asked, "Have you found any other complaints," she answered, "No. We did not."
The procedure used by the Streets Department appears to be adequate and responsive. In the case of Mr. Paris' complaint the defect was repaired within eight days of its being reported. Ms. Stemley explained that the recording system requires that each complaint be recorded on three forms, a white original, a yellow copy, and a blue copy. After recording the complaint, the yellow copy is immediately sent to the computer room for recordation. The blue and white forms are sent to the surveyor. The surveyor then inspects the area indicated in each complaint; after this inspection only the blue copy is kept in the file. If the hole is fixed immediately, both copies are returned to the department, but only the white copy is kept in the file.
The parties argue that the trial court was bound to make a credibility call between the testimony of Ms. Reyes and Ms. Stemley in order to determine whether the City had notice of the defect. Regarding the contradictory testimony of these two witnesses the trial court stated in its oral reasons for judgment that it found the procedure set out by the city in this case very persuasive. Every call is recorded. With each call a name is requested. An investigation is done on every complaint. The court indicated that it relied on Ms. Stemley's testimony that she checked through all of the files that she has for this particular location and further has checked the computer since 1985 and discovered no complaint whatsoever reflected therein. We find that the trial court's finding that the City did not have notice is consistent with the evidence as presented.
In the alternative, Ms. LeBlanc claims that the City of New Orleans had constructive notice of the defect in the vicinity of 424 Bourbon Street. Constructive notice means the existence of facts which infer actual knowledge. La.R.S. 9:2800(C). In Bustamente v. The City of New Orleans, 175 So.2d 404 (La.App. 4th Cir.1965), the Fourth Circuit defined constructive notice as follows:
It suffices to charge constructive notice if it be shown that such defects which caused the injury existed for such a period of time that the municipal authorities, by the exercise of ordinary care and dilligence must have known of their existence in general and could have guarded the public from injury.
*1277 Ms. LeBlanc's only assertion of constructive notice is the testimony of Ms. Reyes who said that the defect had been present and unattended for over a year. However, Ms. Reyes does not allege reporting a hole until December 1987. This accident occurred on the 31st of December, 1987. We do not find that either the hole was so severe or the time period was so long that the City had constructive notice of the hole.
Absent proof that the defect existed for a long period of time and the City failed to remedy it, the City cannot be held liable for injuries sustained by plaintiff. Jackson v. Sewerage and Water Board of New Orleans, 501 So.2d 826 (La.App. 4th Cir. 1986). Other cases have similarly found no liability where the plaintiffs have failed to show how long the defect had existed. Baker v. Sewerage and Water Board of New Orleans, 466 So.2d 720 (La.App. 4th Cir.1985); Rigao v. Sewerage and Water Board of New Orleans, 467 So.2d 1263 (La.App. 4th Cir.1985), writ denied 469 So.2d 988 (1985).
The City of New Orleans has no burden to show that it conducted periodic inspections. Baker, supra at 723. As stated in Griffin v. New Orleans, 533 So.2d 1048 (La.App. 4th Cir.1988), "It would be unreasonably burdensome to require the City to make daily inspections of all City streets." The City insists that it is unreasonable to assume the defect had been present for very long. On a well-travelled street such as Bourbon Street it is more likely that a hole would have been noticed and reported. We find no error with the trial court's judgment.
For the foregoing reasons we affirm the trial court's judgment.
AFFIRMED.