731 So.2d 216 (1999)
Sandra JONES, et al.
v.
Floyd HAWKINS, Jr., et al.
Nos. 98-C-1259, 98-C-1288.
Supreme Court of Louisiana.
March 19, 1999.
Ramona N. Wallis, Jerald N. Jones, Shreveport, for Applicant in No. 98-1259.
Richard M. Jones, Shreveport, for Applicant in No. 98-C-1288.
Richard P. Ieyoub, Atty. Gen., Angie R. LaPlace, Baton Rouge, Richard M. John, John C. Turnage, John S. Stephens, Shreveport, for Respondent in No. 98-1259.
Ramona N. Wallis, Jerald N. Jones, Shreveport, Richard P. Ieyoub, Atty. Gen., Angie R. LaPlace, Baton Rouge, Richard M. John, John C. Turnage, John S. Stephens, Shreveport, for Respondent in No. 98-C-1288.
*217 KIMBALL, J.[*]
We granted writs in this case to resolve the split of opinion among the courts of appeal regarding whether a city's lack of a plan of inspection for defects in its streets constitutes constructive notice on the city's part of existing defects in the streets. We hold that lack of a plan does not give rise to a finding that the city had constructive knowledge of such defects.

FACTS AND PROCEDURAL HISTORY
The instant accident occurred on July 25, 1993, when a bicycle ridden by Terrance Jones, a six-year-old boy, collided with an automobile driven by Floyd Hawkins, Jr., a fifty-nine-year old man. The accident happened at the intersection of Calhoun Street, which runs north and south, and Chester Street, which runs east and west, in Shreveport, Louisiana. There is a hill on Calhoun street immediately before its intersection with Chester. There are no stop or yield signs at the intersection, nor is there a traffic light. The only residence at the intersection is a house, owned by T.C. and Cleo Alexander, that is enclosed by a chain-link fence and is located at the southeast corner of the intersection. The fence and the trees that surround the house are both covered with overgrown foliage. Testimony at trial established both that this foliage was seasonal and that it had been there for a very long time.
On the date of the accident, Hawkins was traveling between 15 and 20 miles per hour in a westerly direction on Chester when Terrance, who had been riding in a northerly direction on Calhoun, overshot the right turn he was making onto Chester. When Hawkins saw Terrance, he veered to his right and ran completely off the road, but was unable to avoid a collision with Terrance. Hawkins later testified that the foliage at the southeast corner of the intersection prevented him from seeing Terrance until the child was in the intersection. Terrance struck the left front fender of Hawkins car and was injured.
Terrance's parents, Sandra Jones and Randolph Willis, filed this suit against Hawkins, his insurer, Safeco, the Alexanders, and the city of Shreveport. They asserted that the City was liable both because it did not install a traffic control device, such as a stop sign, at the intersection and because it did not make any efforts to eradicate the vegetation and thus provide a clear view at the intersection. The City asserted as a defense that it had no actual or constructive notice of a defect at the intersection of Calhoun and Chester, as La. R.S. 9:2800 mandates that a public entity cannot be held liable for damages caused by defects in its streets unless the entity has notice of this defect.[1]
The case was tried to a jury on the issue of the liability of Hawkins, Safeco, and the Alexanders and to the judge on the issue of the liability of the City. The jury found no liability on the parts of Hawkins, Safeco and the Alexanders. Likewise, the trial judge found that the City was not liable for Terrance's injuries. Because the judge found the City did not have notice of a defect in the form of absence of a stop sign at the corner of Calhoun and Chester, he did not reach the issue of causation.[2]
The plaintiffs appealed the findings of no liability on the parts of all defendants. *218 The court of appeal reversed the trial court's findings as to the liability of the City and the Alexanders, assigning 20% fault to the City and 5% to the Alexanders. Jones v. Hawkins, 29,914 (La.App. 2 Cir. 1/21/98), 708 So.2d 749. The appellate court held that the trial court committed manifest error when it found a lack of notice of the defect on the City's part because "the absence of any program on the city's part to inspect and discover the condition also implies knowledge." Id. at 755 (citing St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964)). The court alternatively found that because the foliage at the southeastern corner of the intersection had been there for quite some time and because there was testimony that City workers were periodically in the vicinity of the intersection to perform maintenance, the City had constructive knowledge of the "defect" under La. R.S. 9:2800.
The court of appeal found negligence on the part of the Alexanders because it found the duration and extent of the overgrowth was such that they knew or should have known that it created a hazardous condition for those traveling in the intersection.
Additionally, the court of appeal found that plaintiffs were contributorily negligent and assigned 30% fault to Jones and 45% fault to Willis. The appellate court then awarded damages to Jones in both her individual capacity and as tutrix of Terrance. Terrance's general damages were awarded to Jones in her capacity as tutrix, and damages for his medical expenses were awarded to her in her individual capacity.
Both the City and Jones sought review in this court. We granted the City's writ for several reasons, including the fact that the court of appeal's holding that the City's lack of a plan of inspection for defects in its streets constitutes constructive knowledge of any defects is contrary to the holdings of other appellate courts and thus creates a split of opinion among the circuits on this issue. 98-1259 (La.9/4/1998), 723 So.2d 959. We granted Jones' writ solely on the issue of whether the appellate court erred in awarding damages for Terrance's medical expenses to Jones in her individual capacity rather that in her capacity as his tutrix. 98-1288 (La.9/4/1998), 723 So.2d 425.

LAW AND ANALYSIS
Traditionally, when pursuing a claim for damages due to road defects, Louisiana plaintiffs could proceed under theories of negligence and strict liability. These theories have historically been distinguished on the basis that negligence required a finding of notice, while under strict liability there was no requirement of showing that the defendant knew or should have known of the defect. Lee v. State Through Department of Transportation and Development, 97-0350 (La.10/21/97), 701 So.2d 676. This distinction was eliminated by La.R.S. 9:2800, which requires proof of either actual or constructive notice of a defect before a public entity may be held liable for damages caused by the defect. The requirements are thus now the same for proving either theory.
Accordingly, for a plaintiff to successfully recover against a public entity for damages due to road defects, he must prove: (1) the thing that caused his damages was in the defendant's custody; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (3) the defendant had actual or constructive notice of the defect, yet did not take steps to correct it within a reasonable period of time; and (4) the defect was a cause in fact of the plaintiff's harm. Lee v. State Through Department of Transportation and Development, 97-0350 (La.10/21/97), 701 So.2d 676; Bessard v. State, Department of Transportation and Development, 94 0589 (La.11/30/94), 645 So.2d 1134.
In discussing the third element, that of notice of the defect, the court of appeal stated simply, "The absence of any program on the city's part to inspect and *219 discover the condition also implies knowledge. St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964)." The case relied on for this proposition, St. Paul, involved a plaintiff who was injured when he tripped and fell on a four-inch drop in a sidewalk. Plaintiff sued the city of New Orleans, arguing the sidewalk was defective. At trial, the Sidewalk Inspector for the city of New Orleans testified that his department did not have a regular plan to inspect all of the sidewalks in the City, but his department did inspect sidewalks after receiving complaints about them. Finding the drop in the sidewalk was "in the nature of a trap," this court found the City liable because the defect had been there for so long that the City was negligent for not discovering the hazard and that the defect was such that it should have been "anticipated or foreseen in the exercise of reasonable prudence and care." Id. at 278.
The St. Paul court held that the City was liable because the defect at issue had been there for so long that the City should have discovered it through the exercise of its duty of reasonable care and prudence. It did not hold that the City was liable based on lack of a plan of inspection. The court of appeal, therefore, erred in relying on St. Paul for such a proposition. Furthermore, in holding that the City's lack of a plan of inspection for defects in its streets constitutes constructive knowledge, the lower court created a split of opinion among the circuits on this issue.
In Netterville v. Parish of East Baton Rouge, 314 So.2d 397 (La.App. 1 Cir.1975), the plaintiffs sustained injuries in a one-car accident. The accident occurred when the car that Mrs. Netterville was driving and in which her two children were riding overturned after hitting a large pothole on a Parish road. Evidence adduced at trial showed that the pothole had been present in the road for a long period of time. Like the St. Paul court, the Netterville court held that the Parish had constructive notice of the pothole due to the length of time it had existed. The Netterville court was, however, careful to note that, although a plan of inspection could be beneficial, "no agency charged with road and street maintenance is required to institute a systematic inspection program." Netterville, 314 So.2d at 401. The finding of constructive notice was not, therefore, based on the lack of a plan of inspection.
The fourth circuit has also declined to hold that the absence of a plan of inspection constitutes constructive knowledge. In Griffin v. City of New Orleans, 533 So.2d 1048 (La.App. 4 Cir.1988), a plaintiff suffered injuries when she slipped and fell after stepping into a hole on a pedestrian down ramp. Testimony established that the Department of Streets worked on a "complaint system;" that is, the Department did not have a regular plan of inspection, but rather responded to complaints from citizens about hazardous street conditions and other problems with the streets. The Griffin court found that there was no evidence to show that the hole had been there so long that the City should have discovered it in the exercise of its duty of reasonable care and thus found the City was not liable. The Griffin court was careful to note that a plan of inspection would be "unreasonably burdensome" on the City, and declined to hold that lack of a plan implied constructive knowledge. Similarly, in Armstrong v. City of New Orleans, 539 So.2d 1000 (La.App. 4 Cir. 1989) the court found that the Sewerage and Water Board was not liable for damage caused to the plaintiff when his cab went into a pothole. The court based its holding on the plaintiffs failure to prove either that the Board had a duty to maintain the street or, assuming arguendo, that the Board did have such a duty, that the Board had knowledge of the dangerous condition. The Armstrong court cited Netterville for the proposition that "no agency charged with road and street maintenance is required to institute a systematic maintenance program." Finally, LeBlanc v. City of New Orleans, 573 So.2d 1274 (La.App. 4 Cir.1991), involved a plaintiff *220 who was injured when she slipped and fell in a pothole on Bourbon Street. The LeBlanc court also found that the City did not have to show that it conducted periodic inspections, and that court cited Griffin for the proposition that "[i]t would be unreasonably burdensome to require the City to make daily inspections of all City streets."[3]
After considering the foregoing opinions, we find we cannot agree with the second circuit's position that lack of a plan constitutes constructive knowledge of the defect. The definitions of actual and constructive knowledge are facially incompatible with the implication of knowledge from a lack of a plan to inspect. Actual knowledge has been defined as "knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities." See, e.g, Fragala v. City of Rayville, 557 So.2d 1118 (La.App. 2 Cir.1990); Boddie v. State, 27,313 (La.App. 2 Cir. 9/27/95), 661 So.2d 617; Purolator Courier Corp. v. City of New Orleans, 93-1068 (La.App. 4 Cir.1994), 635 So.2d 1232. Constructive knowledge is defined by La. R.S. 9:2800 as the existence of facts that infer actual knowledge. The absence of a plan of inspection in no way shows or implies that an employee of the appropriate public entity has actual knowledge of a dangerous defect or condition. Indeed, quite the opposite is true; in the absence of other facts, such as recorded complaints about a defect, lack of a plan implies that employees of the public entity have no actual knowledge of dangerous defects or conditions. Thus, a holding that lack of a plan infers knowledge effectively eviscerates the notice requirement of La. R.S. 9:2800.
Because we find that the City's duty to use reasonable care in maintaining its public ways does not encompass conducting periodic inspections of its streets, and the failure to conduct such inspections does not imply knowledge of a dangerous defect on those streets, we hold the failure to conduct inspections does not impute to the City constructive knowledge of defects in its streets.
We need not, however, address the remaining arguments dealing with the City's constructive knowledge of the defect because we find the fourth element of the test, whether the defect was a cause in fact of the plaintiff's harm, has not been satisfied. An action or thing is a cause in fact of a plaintiffs injury if it was a substantial factor in bringing about that injury. Edwards v. Horstman, 96-1403 (La.2/25/97), 687 So.2d 1007. Plaintiff simply did not prove by a preponderance of the evidence that the foliage was a substantial factor in bringing about the accident and the resulting damages.
The only evidence that the plaintiff presented on the issue of whether the foliage caused the accident was the testimony of Duaine Evans, plaintiff's expert. Evans testified that the foliage prevented both Terrance and Mr. Hawkins from seeing each other until they were both in the intersection. Evans did not, however, reconstruct the accident, nor did he or anyone else testify as to what would have happened if the foliage had not been there. The evidence thus does not indicate that the accident more probably than not could have been avoided if the foliage had not been present.
*221 The evidence does, however indicate that this accident more probably than not would have occurred regardless of the presence or absence of the foliage. This accident apparently occurred when Terrance, a small child, was riding his bicycle down a steep hill, attempted to make a right turn, and entered Mr. Hawkins' lane of travel. No evidence was presented to show that the additional vision allowed by the removal of the foliage would more probably than not avoided this chain of events. Thus, because the evidence does not preponderate to a finding that the foliage caused the accident, we hold that the City is not liable to the plaintiff and reverse the appellate court's allocation of 20% fault to the City.
However, we do not address that portion of the court of appeal's judgment finding the Alexanders 5% liable for the accident. The Alexanders did not seek review of that portion of the judgment, and it is now final. Thus, despite our finding that the City is not liable, we must nevertheless address the plaintiff's contention that the lower court erred in awarding damages for Terrance's medical expenses to her in her individual capacity rather than in her capacity as tutrix and then reducing those damages by the fault of both Ms. Jones and Mr. Willis.
After the appellate court's decision in this case was rendered, we held in Aucoin v. State Through Department of Transportation and Development, 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62, that when a parent brings suit as a tutrix to recover medical expenses that belong to a child, the parent's recovery is not personal and cannot be reduced by the parent's percentage of fault. Because Jones sought damages for Terrance's medical expenses in her capacity as tutrix, an award of those damages may not be reduced by the fault of his parents. We therefore reverse the appellate court's contrary finding and hold that damages for Terrance's medical expense should have been awarded to Jones in her capacity as tutrix and not reduced by the fault of his parents.

CONCLUSION
The judgment of the appellate court is reversed on the issues of the City's liability and amended on the issue of the award of the minor's medical damages to his mother in her individual rather than her representative capacity.
NOTES
[*] Knoll, J., not on panel. Rule IV, Part 2, § 3.
[1] The plaintiffs amended their petition to assert that La. R.S 9:2800 violated the waiver of sovereign immunity found in La. Const. Art. 12, § 10(A), but did not do anything else to litigate this issue. No evidence was ever adduced on this alleged unconstitutionality, nor was a hearing held on the issue. Accordingly, there is no trial court judgment on this issue.
[2] Although some evidence was introduced at trial regarding the alleged defective nature of the foliage, the majority of the evidence focused on the alleged defect in the form of lack of a stop sign at the intersection. This may explain why the judgment only addressed the latter issue.
[3] Although there is an older line of cases that holds that the City does have a duty of periodic inspection, these cases are inapposite to the case at bar, for they deal with the duty of the City to inspect wooden "footbridges and gutter crossings." Pitts v. City of New Orleans, 227 So.2d 764 (La.App. 4 Cir.1969). This duty is imposed upon the City because wood (unlike concrete and asphalt) is subject to "rapid decay," which could "endanger the lives of those who use" these wooden footbridges and gutter crossings. Pitts at 766, citing Smith v. City of Orleans, 135 La. 980, 66 So. 319 (1914).