[ .WILLIAMS, Judge.
The plaintiffs, Laverna Wiggins, Littia Wiggins, Keshia Stinson, Onedia George, Curtis Flournoy, Frank George, Issac George and Anthony Love, appeal a judgment in favor of the defendant, the City of Shreveport (the “City”). The trial court found that the evidence failed to establish the City’s actual or constructive notice that vehicles parked near the intersection created an unreasonable risk of harm to plaintiffs. For the following reasons, we affirm.
FACTS
On June 13, 1995, Laverna Wiggins was driving an automobile south on Elder Street in Shreveport, Louisiana. Passengers riding with Wiggins included her daughter, Littia Wiggins, Keshia Stinson and Onedia George. The vehicle was a 1985 Nissan Sentra owned by Curtis Flournoy. Wiggins stopped at a stop sign where Elder Street ends at the intersection with Murphy Street, which runs east to west with a travel lane in each direction and a center turn lane. There is an additional lane along each curb of Murphy Street marked with a solid white line. At the time, vehicles were allowed to park within these curb lanes.
In preparation to make a left turn onto Murphy Street, Wiggins looked eastward to watch for oncoming westbound traffic. From her position at the stop sign on Elder Street, Wiggins alleges that her view of Murphy Street was obstructed by a four-foot concrete retaining wall and shrubbery located to her left at the northeast corner of the intersection. According to Wiggins, she moved the vehicle forward approximately one-half ear length and stopped again, but she and her passengers were still unable to see oncoming traffic because their view was obstructed by three vehicles parked to their left along Murphy Street. Wiggins then drove forward another one-half car length and stopped a third time, with the front of the vehicle resting between the curb and the white lane marker of Murphy Street. *864 However, Wiggins and her passengers still could not see oncoming traffic. 12As Wiggins moved slowly into the travel lane, her automobile was suddenly struck by the vehicle of Livingston Horn, who was driving west on Murphy Street.
After the collision, Laverna Wiggins and Onedia George were taken to the Schum-pert Medical Center emergency room. George was treated for a broken left arm and Wiggins was given a prescription for pain medication. Keshia Stinson was treated at LSU Medical Center. Littia Wiggins did not seek emergency care, but in August 1995 began treatment with a chiropractor for back pain.
Subsequently, the plaintiffs, Laverna Wiggins, Littia Wiggins, Keshia Stinson, Onedia George and Curtis Flournoy, filed a petition for damages against the defendant, the City of Shreveport. The plaintiffs alleged that the intersection was unreasonably dangerous and that the City was negligent in failing to install a traffic signal or to place “No Parking”signs along Murphy Street. Prior to trial, Onedia George died and her surviving children, Frank George, Issac George and Anthony Love, were substituted as plaintiffs.
After a trial, the district court issued written findings of fact, concluding that at the time of the collision, the presence of parked vehicles in the shoulder lane created an unreasonably dangerous condition at the intersection. However, the trial court found that there was no evidence that the City received actual notice of the unreasonable risk of harm created by the parked vehicles, and that there was insufficient evidence to establish the City’s constructive notice of the risk. The trial court rendered judgment in favor of the defendant. The plaintiffs appeal the judgment.
DISCUSSION
The plaintiffs contend the trial court erred in finding that the City was not liable for their injuries. Plaintiffs argue that the City possessed knowledge of the dangerous condition because city workers had traveled through the intersection and were aware of the presence of the concrete wall and of vehicles parked along 1.¡Murphy Street.
In order to recover against a public entity for damages due to a defective condition, the plaintiff must prove by a preponderance of evidence: (1) the thing that caused her damages was in the defendant’s custody; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (3) the defendant possessed actual or constructive notice of the defect, yet did not take corrective action within a reasonable period of time; and (4) the defect was a cause in fact of the plaintiffs harm. LSA-R.S. 9:2800; Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216. Proof by a preponderance of evidence means that, when taken as a whole, the evidence shows that the fact or cause sought to be proven is more probable than not. Vig v. City of Shreveport, 28,530 (La.App.2d Cir.8/21/96), 679 So.2d 524, writ denied, 96-2285 (La.11/15/96), 682 So.2d 775.
In the present case, Laverna Wiggins testified that in approaching the Elder-Murphy Street intersection, she first stopped the vehicle slightly in front of the stop sign, where her view was blocked by a wall and sloping yard on the corner. She then moved forward approximately one-half car length and made a second complete stop. Laverna stated that neither she nor her passengers were able to see oncoming traffic because of several vehicles parked along Murphy Street. She again moved forward and stopped a third time, with the front of her vehicle resting between the curb and the white lane marker of Murphy Street. Laverna said that she and her passengers still could not get an unobstructed view of the westbound lane of Murphy, but she proceeded into the intersection.
This testimony was corroborated by two of the passengers, Littia Wiggins and Kes- *865 hia Stinson. Each estimated that after Laverna made her third stop, the vehicle’s front bumper was positioned between the curb and the white lane marker. Their testimony contradicts the trial court’s finding that Laverna’s third stop placed the front of her vehicle into the travel lane of Murphy Street.
14James Monds testified that he was hired by plaintiffs to take measurements and photographs of the intersection in August 1995. Monds stated that the distance from the inside edge of the Murphy Street curb to the white lane marker is nine feet. In September 1997, after testifying at trial, Monds went to the scene and took several additional photographs, which were excluded by the trial court, but offered as a proffer to indicate the driver’s view when three vehicles were parked along the curb lane of Murphy.[1]
When recalled as a witness, Monds testified that one photo, P-22, showed the driver’s view with the vehicle’s front bumper even with the stop sign, so that the driver’s position was seven feet from the sign. Monds explained that another photo, P-23, depicted the driver’s view available when the driver’s position was even with the curb. At that point, using the measurements of Monds, the vehicle’s front bumper would extend seven feet beyond the curb, in a position approximately two feet short of the white lane marker.
Photograph P-23, and the admitted photos P-7 and P-8, show that a driver looking from that position should have a view behind the parked vehicles and down the westbound lane of Murphy Street. Thus, the evidence demonstrates that when Laverna Wiggins stopped the third time, she should have been able to determine whether westbound traffic was approaching on Murphy, and waited to make sure a vehicle was not upon the intersection before proceeding. Before attempting a left turn, a motorist should ascertain whether it can be completed safely. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305.
Even if for some reason Laverna could not obtain a view of oncoming traffic at that point, the testimony indicates that she still could have moved forward |Ranother one or two feet, and stopped to look again without placing her vehicle into the travel lane. However, Laverna and her two passengers acknowledged that after stopping the third time she did not attempt to stop again, but proceeded into the intersection, where she was struck by the other vehicle. The record shows that the speed limit was 35 mph on Murphy Street, and that any sight impairment resulting from vehicles parked curbside could have been overcome with appropriate caution.
Because the trial court found that the City did not have knowledge of the dangerous condition at the intersection, the issue of causation was not expressly reached. The plaintiffs were required to establish that the parked vehicles created an unreasonably dangerous condition, which was a cause in fact of their injuries. However, the evidence presented equally supports a determination that the accident could have been caused by Laverna’s failure to stop again and look for traffic before proceeding into the travel lane of Murphy Street, despite having the space to move forward and ascertain whether a left turn could be made safely.
Consequently, based upon this record, we must conclude that the plaintiffs failed to establish by a preponderance of evidence that the obstacle presented by the parked vehicles was the cause in fact of their harm. Having reached this conelu *866 sion, we need not address the plaintiffs remaining argument concerning the City’s actual or constructive notice of a dangerous condition. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. The costs of this appeal are assessed to the appellants, Laverna Wiggins, Littia Wiggins, Keshia Stinson, Onedia George, Curtis Flournoy, Frank George, Issac George and Anthony Love.
AFFIRMED.

. The purpose of a proffer is to preserve evidence excluded by the trial court so that the evidence is available for appellate review. McLean v. Hunter, 495 So.2d 1298 (La.1986). The trial court excluded the photo enlargements because they were not previously provided to defendant. However, because we find that admission of the photographs would not have prejudiced the defendant, we have considered the proffered evidence in our review of this case.