837 So.2d 44 (2002)
Andre LEWIS, Plaintiff-Appellee,
v.
CITY OF SHREVEPORT, et al., Defendants-Appellants.
No. 36,659-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*45 Casten & Pearce, by Alan T. Seabaugh Jason M. Nash, Amy M. Perkins, Shreveport, Counsel for Appellant City of Shreveport.
Gregory L. Kelley, Shreveport, Counsel for Appellee Andre Lewis.
Before STEWART, GASKINS and CARAWAY, JJ.
STEWART, J.
The City of Shreveport ("City") appeals the judgment of the trial court finding it liable for injuries sustained by Andre Lewis ("Andre") after he fell in a sink hole that developed in the ground under one of its water meters and awarding damages in the amount of $204,472.34. For the reasons states herein, we affirm the trial court.

FACTS
On July 28, 1999, Andre Lewis was attempting to keep his child from entering the roadway in front of Ethel Lewis' house located at 4310 Waters Place in Shreveport. Ethel is Andre's mother. As he crossed between the sidewalk and the street, Andre fell into a large, three feet deep sink hole directly below the water meter. The water meter itself was sunk down approximately one foot below ground level.
Apparently, the City had received numerous complaints concerning this hole in the past, but had taken no action to repair *46 the hole. Following this incident, the City immediately sent a crew to repair the hole. It is undisputed that the hole was located on a public right of way, directly below the City's water meter. The City stipulated that the area where the accident occurred was under its care, custody, and control.
As a result of his fall, Andre was seriously injured, suffering a herniated lumbar disc at the L3-4 level and a severe knee injury. He underwent reconstructive knee surgery at LSUMC, and future surgery was recommended by his treating physician.
Following a bench trial, the City was found to be strictly liable for Andre's injuries under La. C.C. art. 2317. This appeal followed.

DISCUSSION

Strict Liability/La. C.C. art. 2317
The City contends that the trial court erred in finding that the portion of the right-of-way where the hole developed was in its care, custody, and control. Strict liability is governed under La. C.C. art. 2317 which reads in pertinent part as follows:
Art. 2317. Acts of others and of things in custody.
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
The City contends that this area was not in its custody, but rather that the responsibility for the care of the land lies with the owner of the adjacent property, Ethel Lewis, based on the Shreveport Code of Ordinances, Sec. 78-136 which states, in pertinent part:
(a) All record owners of property abutting on the streets of the City shall keep the sidewalks, curbs, and banquettes adjoining their respective property in good and safe condition, in accordance with standards set by the City Engineer.
Although the City acknowledges that courts have restricted the interpretation of this ordinance, it argues that the ordinance can be construed to convey tort liability to the property owner where the "property owner actually created or caused the defect involved." See Snow v. City of Shreveport, 287 So.2d 647 (La.App. 2d Cir. 1973), writ denied, 290 So.2d 332 and 290 So.2d 335 (La.1974). Specifically, the City contends that the hole in the surface was caused by a defect in the four-inch residential service line, approximately one foot from the City's eight inch main, which was owned and controlled by the owner of the adjacent property.
The City contends that the liability for damages caused by a residential sewer line is governed by Shreveport Code of Ordinances, Sec. 94-117 which places the responsibility for maintaining the residential service line on the property owner, and Shreveport Code of Ordinances, Sec. 94-118 which also places the responsibility for repairing defective sewer lines on the property owner. Thus, since the defect was in the residential service line, the owner of the adjacent property, Ethel Lewis, is solely responsible for any defect that would arise. In this case, it is the sink hole through which Andre Lewis fell.
However, we find the City's reliance on these ordinances to be misplaced. Our review of the record leads us to the conclusion that the City's argument is contrary to the law and the evidence presented in this case. The lynchpin of this analysis lies in the fact that the City stipulated that the area where the accident occurred was a public right of way under its care, custody, and control.
*47 It is well established that a stipulation has the effect of judicial admission or confession which binds all parties and the court. La. C.C. art. 1853; State Farm Mut. Auto. Ins. Co. v. Little, 34,760 (La. App.2d Cir.6/20/01), 794 So.2d 927. Consequently, the City is bound by its stipulation.
Moreover, the record is replete with facts that the area was in the custody or care of the City, and that the City wished to have exclusive control or responsibility for any repairs to the area. The sink hole swallowed up the water meter. It is without dispute that the water meter is clearly owned by the City, and the City is solely responsible for its maintenance. Additionally, Lonnie Fouts, Assistant Superintendent of Water and Sewage, testified that the City of Shreveport is "responsible for the main to the meter and the coupling that goes out of your house." Fouts also testified that it is the sole responsibility of the Department of Water and Sewage to determine the cause of sink holes in the public right of way. Fouts testified as follows:
Q. (By Mr. Kelley) When a cave in occurs within the City's right of way-the public's right of way, it's the City's normal practice to go out there an determine what's causing the cave in; is that correct?
A. Yes, sir.
Q. So when a large hole exists and it's a sink hole the City would typically go out into that area between the sidewalk and the street in the right of way [and] dig that area up to see what is causing the sink hole?
A. That is a general statement, yes sir. That's what we would do.
Moreover, when asked by the trial court, Fouts reiterated his earlier testimony in the following exchange:
Q. (By Judge Brun) If you have a sink hole between the sidewalk and the street where the meter is and it's a pretty good size sink hole, do you want the landowner to start digging and go after it or do you want them to call you?
A. Always call us first....
Therefore, the City clearly had assumed responsibility for all repairs of the right-of-way and is responsible for all damages arising from its failure to repair a defect, of which it had notice, therein.
Moreover, the City stipulated to the fact that the area where the sink hole developed was under its custody and care. The City has maintained responsibility for diagnosing and curing dangerous conditions existing in the public right of way, and, in fact, repaired the area in question in front of Ethel Lewis' home following the accident. Consequently, the trial court was correct in finding that the City failed to carry its burden of proof. This assignment is without merit.

Third Party Fault
Contrary to the City's arguments, there is nothing in the record to support that the trial court erred in finding that the development of the sink hole was not the fault of Ethel Lewis. There was no manifest error in the trial court's finding that Ethel Lewis' sewer line did not cause the formation of the hole.
It should be noted that the City came back out in 2000 to attempt to repair a sink hole that had developed in the exact same spot that caused Andre's accident. This second attempt by the City to repair the line came after they ran a robotic video camera through the sewer main in an attempt to find the origin of the leak. At no time did the City issue a bill to Ethel Lewis for the costs of repairing the hole. It stands to reason that if the City concluded that the repairs were brought about through the fault of Ethel Lewis that she *48 would have been billed for the costs of the repairs, or at least informed of the defect in her sewer line.
Assuming arguendo that the City could show that it was a leak from Ethel Lewis' sewer line that caused the hole, the City still has a duty to maintain the public right of way. Jones v. Hawkins, 29-914 (La. App. 2d. Cir. 1/21/98), 708 So.2d 749. Moreover, the City's liability is not solely based on the fact that it had custody or control of the right of way, but that it claimed to have specific responsibility for any repair to the right of way and failed to do so. Even if the court found that Ethel Lewis' sewage line was the problem, the City still claimed to have responsibility for the repairs. However, the court did not make such a finding. Therefore, this assignment is without merit.

CONCLUSION
For the reasons stated above, the judgment of the trial court is affirmed. Costs assessed to the appellant.
AFFIRMED.