I .BROWN, C.J.
Although finding that an unreasonably dangerous condition existed for which the City of Shreveport was responsible, the trial court nonetheless denied plaintiffs personal injury claim against the City, based upon its conclusion that the City had no actual or constructive knowledge of the defect. Finding error, we reverse and remand.

Facts and Procedural History

This accident occurred on January 17, 2003, when plaintiff, John Cunningham, who was taking his mother, his 16-year-old son, and his son’s girlfriend to see a play at the Shreveport Little Theater, stepped in a hole eight inches deep. Due to pain, Cunningham left the play and went to Schumpert Hospital where he was treated in the emergency room for two broken ribs and lower back trauma. Made defendant in this action was the City of Shreveport. The trial was bifurcated with the question of liability being considered first.
The hole that Cunningham stepped in was located in the neutral ground between the public road and the public sidewalk commonly referred to as a banquette. A handicapped parking space is located directly in front of the Shreveport Little Theater. When a car is legally parked in this space, it blocks the handicap ramp and sidewalk leading to the theater entrance. The night that Cunningham fell, a car blocked the sidewalk. Cunningham, who was crossing the street, had to move around the front of the parked car and cross the unlit banquette area in order to reach the sidewalk leading to the theater.
[A City water meter is located in this neutral area. A hole was dug down to the City’s water line, and the meter connected that line to the Theater’s line. The meter was eight inches below the surface. A small concrete slab with a metal cover in the middle was to be laid over the hole level with the surface of the ground. The City inspected all water meter installations. This meter is read monthly to determine the amount of water used by the Theater. To do so, a meter reader has to pull back the cover and peer down into the hole to read the meter. There was no evidence presented as to how this meter was specifically installed. Presumably, the *1216 cover was either improperly or not laid on the surface or it was removed later. The hole in this case was uncovered and obscured by grass and darkness.
According to Lonny Fouts, Assistant Superintendent for Field Operations with the City’s Department of Water and Sewerage, “[A]t one time the City of Shreveport Water Department read meters. We contracted it out around 2000 to Port City (Utilities).” He further testified that the City was responsible for the water meter site and any uncovered hole “over two inches” was hazardous because someone could be injured if they stepped into it.
The trial court made the following findings:
The evidence from plaintiff established that the accident occurred at dark when plaintiff stepped onto the banquette area out of the street. The evidence shows that the area of the water meter cover in the banquette area was approximately 8 inches below grade at the time of this incident. The testimony from the city personnel was that the city would repair any hazard which they saw and that they would repair any water meter cover that was 2 inches below grade. The evidence clearly established that the water meter and cover were the responsibility of the City of Shreveport. To have an 8 inch ^depression in the banquette area in front of a theater is an unreasonably dangerous condition and amounts to a defective condition.
[[Image here]]
As to constructive notice, Mr. Fouts testified that the city maintains a thousand miles of water lines and a thousand miles of sewer lines. While there is indication that city personnel visited the property owned by the Shreveport Little Theater, the testimony from the city personnel established that the work was performed at the rear of the property in question and is not near the water meter cover and had no connection with the water meter cover at all. Additionally, the evidence established that the water meters have been checked by a third-party contractor for two years before this incident. As aforesaid, in order for the plaintiff to prevail, under either negligence or strict liability for any defect, the plaintiff must establish by a preponderance of the evidence, that is, more probably than not, that the public entity (in this case the City of Shreveport) had either actual or constructive notice of the defect. In that latter regard, the plaintiffs case falls short.

Discussion

The effect of La. R.S. 9:2800 is to eliminate the distinction between strict liability and negligence claims against public entities by requiring proof of either actual or constructive notice of a defect before a public entity can be held liable for damages caused by the defect. Jones v. Hawkins, 98-1259, 98-1288 (La.03/19/99), 731 So.2d 216. Liability is limited to cases in which the plaintiff can show that the public entity: (1) exercised care and custody of the defective thing; (2) had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence; (3) had a reasonable opportunity to remedy the defect; and (4) failed to remedy the defect. Jones, supra; Johnson v. City of Winnfield, 37,939 (La.App. 2d Cir.12/10/03), 862 So.2d 433. The district court’s findings pursuant to La. R.S. 9:2800 are subject to manifest error review. Graves v. Page, 96-2201 (La.11/07/97), 703 So.2d 566; Johnson, supra. Under manifest error review, the appellate court reviews the entire record to determine whether the trial court’s findings were manifestly erroneous or clearly *1217 wrong. Stobart v. State, 617 So.2d 880 (La.1993).
Under La. R.S. 9:2800, constructive notice is defined as the existence of facts which infer actual knowledge. This definition allows for the inference of actual knowledge to be drawn from the facts demonstrating that the defective condition had existed for such a period of time that it should have been discovered and repaired if the public body had exercised reasonable care. Whitaker v. The City of Bossier City, 35,972 (La.App. 2d Cir.04/05/02), 813 So.2d 1269; Hammons v. City of Tallulah, 30,091 (La.App. 2d Cir.12/10/97), 705 So.2d 276; Lutz v. City of Shreveport, 25,801 (La.App. 2d Cir.05/04/94), 637 So.2d 636, writ denied, 94-1487 (La.09/23/94), 642 So.2d 1294.
Lewis v. City of Shreveport, 36,659 (La.App. 2d Cir.12/11/02), 837 So.2d 44, is relevant on a number of issues. On July 28, 1999, Lewis fell into a three foot deep sink hole directly below a water meter, which was itself sunk one foot below ground level. The hole was located between a public street and a public sidewalk. The City had received numerous complaints concerning this hole, establishing a history of the City failing to respond to complaints and failing to keep accurate records of complaints.
In Lewis, this court found that the water meter was undisputedly the property of the City, and that “the City is solely responsible for its maintenance.” Lonnie Fouts who testified in the present case also testified |Rm Lewis. He stated that the City would repair such a hole located between a street and a sidewalk. This banquette area is identical to the area of the water meter in the present case. This court found in Lewis that the City was responsible for all damages from its failure to repair a defect. It is interesting to note that the accident in Lewis occurred in 1999, when City employees were reading the water meters.
The eight-inch hole in question in the instant case existed for several years before plaintiffs accident. The water meter during this time was read monthly, first by the City’s employees and then by the City’s contractor’s employees. According to the testimony of its employees, the City bears the responsibility of reading and maintaining its water meters. The City contracted out the duty of reading the meters to Port City Utilities but retained the duty of maintaining the meters and correcting any hazardous condition associated with the meters.
In Jones, supra, the supreme court held that a city’s lack of a plan to inspect its property does not impute constructive knowledge of defects. The present fact pattern is distinguishable from that of Jones. In Jones, supm, the court contrasted the matter before them with St. Paul v. Mackenroth, 246 La. 425, 165 So.2d 273 (1964), in which the court held the city liable because the defect had existed for so long that the city should have discovered it through the exercise of its duty of reasonable care and prudence, not because the city had no plan for inspection. The fact pattern and the plaintiffs argument in the present case more closely resemble the facts and holding of St. Paul, supra, than those of Jones, supra.
|fiIn the case subjudice, there is testimony that the obvious defect had existed for at least five years prior to the accident. The trial court found that “the evidence established that the water meters have been checked by a third party contractor for two years before this incident.” The evidence also established that the uncovered hole existed since at least 1998 when Robert Darrow came to the Little Theater. Robert Darrow, the managing director for *1218 the Shreveport Little Theater since 1998, testified, “[Y]ears ago I called someone about the water meter itself because of the hazard.” He testified that he called the phone number on his water bill and informed the water department that the water meter was six to eight inches below the grass line and that “if you step in it you can twist your anide, which I had done on numerous occasions.” This testimony imputes the City with - actual knowledge. Darrow went on to explain that he, for purposes of safety, occasionally placed a cone over the hole, a tradition started by the theater’s prop man, Charles Long. It is ironic that two dramatists, had since at least 1998, positioned a prop hazard cone over this hazardous condition that was viewed monthly by the City and then later by an independent contractor hired by the City.
Defense questions the value of Darrow’s testimony on the grounds that he did not remember the exact date he called the number on the water bill, he did not remember the name of the person he talked to, he did not keep a log of his call, and there is no record of the call. However, Earnie Negrete, the City’s Superintendent of Streets and Drainage, testified that he examined the registry of complaints which “only go back to January 2000.”
17Fouts, the assistant superintendent for the City’s Department of Water and Sewerage, stated that he only had records of work orders and they only went back to 1999. Darrow took over the Shreveport Little Theater in 1998. Also, he called the number on his water bill, not the Department of Water and Sewerage. The defense put forth no evidence that disputes the validity of Darrow’s sworn statement that he informed the City of the hazard “years ago.”
Further, the area around the theater regularly flooded when it rained. The City had work orders concerning the flooding. It is interesting that Earnie Negrete had no records of complaints about the flooding. Darrow consistently kept no record of any of his calls.
Darrow’s statement vests the City with actual notice. The obvious nature of the hazard that had existed for at least five years before the accident imputes the City with constructive notice. Further, the City did have its employees check this meter site up to two years before this accident and this also would provide actual notice of the defect. The City should have required the meter reader, whether its employee or contractor, to notify the City that an eight-inch hole existed. Without incurring substantial cost to the City or Port City Utilities, be it in time or money, the danger to the public could have been eliminated. Clearly, the constructive notice element, if not the actual notice requirement, is present under these facts and circumstances. See Johnson v. City of Winnfield, supra.
|sWe are constrained to find that the trial court was clearly wrong in finding that the City of Shreveport had no constructive or actual knowledge of the defective water meter. We further find no fault on plaintiffs part.

Conclusion

For the reasons set forth above, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion. Costs are assessed to the City of Shreveport.
REVERSED and REMANDED.
GASKINS, J., concurs without reasons.
PEATROSS, J., dissents with written reasons.
STEWART, J., dissents for reasons assigned by J. PEATROSS.