# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-767

RICHARD RODNEY LAIRD

VERSUS

CITY OF OAKDALE

************

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN, NO. 2002-064,
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

************

### MICHAEL G. SULLIVAN
### JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and John B. Scofield,[*] Judges.

**REVERSED AND REMANDED.**

J. Craig Jones
Jones & Hill, LLC
131 Highway 165 South
Oakdale, Louisiana 71463
(318) 335-1333
Counsel for Plaintiff/Appellant:
    Richard Rodney Laird

J. Scott Thomas
Attorney at Law
700 North Tenth Street
Baton Rouge, Louisiana 70802
(225) 344-5001
Counsel for Defendant/Appellee:
    City of Oakdale

---

[*]John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore.*

SULLIVAN, Judge.

Richard Rodney Laird appeals the dismissal of his suit against the City of Oakdale (the City) on summary judgment. For the following reasons, we reverse and remand.

**Facts and Procedural History**

On June 22, 2001, while walking on the sidewalk along Beck Avenue in Oakdale, Louisiana, Mr. Laird fell into a storm drain when the grate covering it collapsed as he stepped on it. Photographs taken before the site had been repaired showed that the grate and one of the two metal bars supporting it had fallen into the drain.

Mr. Laird filed suit against the City on February 7, 2002. On October 3, 2003, the City filed a motion for summary judgment, arguing that Mr. Laird would not be able to prove either that the grate was defective or, alternatively, that the City had actual or constructive knowledge of a defect. The trial court granted summary judgment after a hearing on March 5, 2004, but the court reporter was unable to produce a transcript of the hearing because of a software malfunction. Hence, the trial court's reasons for granting summary judgment are not in the appellate record.

In support of its motion for summary judgment, the City introduced the affidavit of its public works superintendent, Robert Staehle, and the deposition of Mr. Laird. In his affidavit, Mr. Staehle stated that the storm drain in question was "prefabricated" and "of standard construction"; that the City did not construct or alter it in any way; that the City had not performed any work on that particular storm drain in the year 2001, other than work related to the present incident; that no reports were made to the City about this storm drain in the year prior to the incident in question; and that there was no history of problems with the storm drain prior to this incident.

The City also pointed to Mr. Laird's deposition testimony that he had walked across that same storm drain about a week prior to the accident, at which time "it seemed to hold [him] pretty steady."

Mr. Laird opposed the City's motion with the affidavit of Andrew J. McPhate, a mechanical engineer, and with Mr. Staehle's deposition. In his affidavit, Mr. McPhate stated that the framework supporting the grate was unreasonably dangerous because it did not have a "perimeter flange" support. As shown in photographs taken shortly after the accident, the grate covering the storm drain was supported only by two rolled steel bars welded to an angle iron. Mr. McPhate explained that this configuration was inevitably subject to catastrophic failure, as corrosion from the exposure to elements would lead to cracking, resulting in one of the bars becoming detached from the angle iron. On the other hand, according to Mr. McPhate, a perimeter flange was not subject to catastrophic failure and could have been constructed from the same angle iron that the metal bars were welded to at little or no additional cost. Mr. McPhate also stated that the absence of a perimeter flange is apparent upon casual inspection, as the improper support system was indicated by "obvious vertical distortion of the grate." He also noted that another storm drain on the same street, just to the south of the one into which Mr. Laird fell, did have a perimeter flange support.

In his deposition, Mr. Staehle testified that the storm drain in question was constructed sometime in the 1980s, before he became employed by the City. After viewing photographs taken shortly after the accident, he stated that the obvious cause of the accident was one of the welds coming loose. Mr. Staehle acknowledged that a perimeter flange was a superior form of support because it created a cradle for the

2

grate and that he did not know of a another grate in the City that was supported by welded bars. He stated that, sometime in the past five years, residents had complained that the storm drain in question was not draining properly, which led to the construction of another drain about four to five feet south of the one into which Mr. Laird fell. This second drain was built with a perimeter flange.

Mr. Staehle testified that the City does not have a policy for the regular inspection of storm drains, but that his employees have general instructions to alert his department whenever they see a potential hazard with the sidewalks and streets. He stated that his employees perform routine maintenance on the drains, particularly after heavy rains when debris needs to be removed. He assumed that the City would have performed some maintenance on the drain in question at some time before Mr. Laird's accident. He also would have inspected, but not directly supervised, the construction of the newly-added storm drain. That inspection would have been the last time that Mr. Staehle viewed the drain where Mr. Laird fell.

On appeal, Mr. Laird argues that the trial court erred in granting summary judgment because there are genuine issues of material fact as to whether the storm drain was defective and as to whether the City had actual or constructive notice of a defective condition.

**Opinion**

Appellate courts review summary judgments *de novo*, applying the same criteria as the district courts in determining the appropriateness of summary judgment. *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131. In *Babin v. Winn-Dixie Louisiana, Inc.*, 00-78, pp. 3-4 (La. 6/30/00), 764 So.2d 37, 39, the supreme court further explained:

3

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). In 1997, the legislature enacted La.Code Civ.P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Nonetheless, "despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Willis v. Medders*, 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050.

Louisiana Revised Statutes 9:2800(C) provides in part:

[N]o person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

Thus, to prevail against the City, Mr. Laird must be able to prove the City's ownership or custody of property that is defective because it creates an unreasonable

4

risk of harm; the City's actual or constructive knowledge of the defect; the City's failure to take corrective action within a reasonable time; and causation. *See Toston v. Pardon*, 03-1747 (La. 4/23/04), 874 So.2d 791.

The City supported its motion with Mr. Staehle's affidavit, in which he stated that the storm drain was "prefabricated" and "of standard construction" and that the City did not construct or alter it in any way. Mr. Laird then produced the expert opinion of a mechanical engineer who stated that the grate covering the storm drain was defective because it was not supported by a perimeter flange and, further, that the actual configuration of its support, *i.e.*, two metal bars welded to an angle iron, was inevitably subject to catastrophic failure. In his deposition, Mr. Staehle agreed that the obvious cause of Mr. Laird's accident was one of the two metal bars coming loose from the angle iron, as shown in photographs taken shortly after the accident.

Assuming without discussion that Mr. Staehle's affidavit was sufficient to meet the City's burden of proof as the movant for summary judgment, we find that Mr. Laird has met his burden of showing that a genuine issue of material fact exists as to whether the storm drain's grate support was defective. The City has shown that it did not alter a "prefabricated" storm drain of "standard construction." Mr. Laird, however, has presented expert opinion evidence that the storm drain's original construction was defective due to lack of a proper grate support, *i.e.*, a perimeter flange, and that this defect created an unreasonable risk of harm because the grate, after exposure to the elements over time, would inevitably fail catastrophically. Mr. Staehle's affidavit does not address the design problem identified by Mr. McPhate, and in his deposition, Mr. Staehle recognized that the design proposed by Mr. McPhate is superior to the actual construction of the storm drain. Mr. Staehle

5

also acknowledged that he was unaware of any other storm drain in the City with this particular configuration and that a storm drain added within five feet of the one in question was constructed with a perimeter flange.

As the supreme court recognized in *Willis*, 775 So.2d at 1051, "when the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion." (In *Willis*, the supreme court concluded that the plaintiff in a products liability action defeated summary judgment by producing an engineer's affidavit that established the existence of an alternative seatbelt design.) In the present case, we find that Mr. Laird, through expert opinion and lay testimony, has shown that a genuine issue of material fact exists as to whether the storm drain created an unreasonable risk of harm.

In support of its motion on the issue of constructive notice, the City points to Mr. Laird's deposition testimony, in which he stated that he walked across the same storm drain approximately one week before the accident and that it seemed to support him "pretty steady." Mr. Laird opposes the motion on this issue with Mr. McPhate's affidavit, in which he states that the absence of a perimeter flange was obvious upon casual inspection due to "obvious vertical distortion of the grate," and with Mr. Staehle's deposition testimony that city workers would have performed maintenance on that particular storm drain before the accident. Mr. Laird also points out that Mr. Staehle testified that the last time he would have observed that storm drain was when he inspected another one constructed nearby.

Louisiana Revised Statutes 9:2800(D) provides: "Constructive notice shall mean the existence of facts which infer actual knowledge." Constructive notice may be shown by facts demonstrating that the defective condition existed for such a period of time that the public body would have discovered and repaired it, had the public body had exercised reasonable care. *Truelove v. Bissic*, 32,883 and 32,884 (La.App. 2 Cir. 3/1/00), 754 So.2d 377, *writ denied*, 00-950 (La. 5/26/00), 762 So.2d 1109. Lack of plan for periodic inspections does not impute constructive knowledge. *Jones v. Hawkins*, 98-1259 (La. 3/19/99), 731 So.2d 216.

In the present case, Mr. Laird has produced evidence that the storm drain was originally constructed in the 1980s without a perimeter flange and that this condition was obvious upon casual inspection. He has further shown that residents nearby had previously complained about this storm drain's performance, after which the City determined that the drain was not working properly because a grassy area to the south of the sidewalk (in which the storm drain was located) was higher than the sidewalk. To correct this problem, the City constructed another storm drain—with a perimeter flange—only four to five feet south of the preexisting drain. Mr. Staehle stated in his deposition that he would have inspected the new drain after its construction. That inspection would also have been the last time he viewed the drain into which Mr. Laird fell.

In *Johnson v. City of Winnfield*, 37,939 (La.App. 2 Cir. 12/10/03), 862 So.2d 433, the plaintiff was injured when a manhole cover suddenly shifted as he stepped on it. The record contained testimony that, although a manhole cover would not "rust out," it could become unstable if it was dislodged from its outer ring. As in the present case, the city did not have a routine inspection policy, but workers were

7

instructed to report any problems they noticed. A maintenance worker testified that he would have inspected this particular manhole approximately two weeks before the accident, after a private contractor had worked on the main sewer line from that location. On that record, the appellate court found no error in the conclusion that the city had actual or constructive knowledge that the manhole cover was unstable.

In the present case, the City investigated a problem with this storm drain, determined that another drain four to five feet to the south of the existing one was needed, and constructed the second drain in the area with a perimeter flange support. According to Mr. Staehle, he would have inspected the newly-constructed drain sometime after its completion. Under these circumstances, we find that a genuine issue of material fact exists as to whether the City should have discovered, either in the investigation of the drainage problems with this drain or in the inspection after the second drain was completed, that the drain into which Mr. Laird fell was not constructed with a perimeter flange.

**Decree**

For the above reasons, the judgment of the trial court dismissing Plaintiff's suit on summary judgment is reversed, and the case is remanded for proceedings consistent with this opinion. Costs of this appeal are assessed to Defendant-Appellee, the City of Oakdale.

**REVERSED AND REMANDED.**