STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-716

WILLIE MAE SCOTT

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT - RISK MANAGEMENT
DIVISION

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20074061
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Billy
Howard Ezell, Judges.

AFFIRMED.

**Bryan David Scofield**
**James Thomas Rivera**
**Scofield & Rivera, LLC**
**P. O. Box 4422**
**Lafayette, LA 70502**
**Telephone: (337) 235-5353**
**COUNSEL FOR:**
    **Defendant/Appellee: - Lafayette Consolidated Government -Risk**
    **Management Division**

**Chuck David Granger**
**David J. Meche**
**P. O. Drawer 1849**
**Opelousas, LA 70571-1849**
**Telephone: (337) 948-5000**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Willie Mae Scott**

**THIBODEAUX, Chief Judge.**

Willie Mae Scott suffered injuries when the chime pull cord on a bus owned and operated by Lafayette Consolidated Government ("LCG") came loose and struck her near her eye. Ms. Scott argues that LCG had or should have had notice of the poor condition of the chime pull cord and the attached clamp that served to secure the cord. Ms. Scott also argues that although LCG is a public entity, it operates a public bus system, thereby making it a "common carrier" and subjecting it to a higher duty of care. The trial court granted LCG's motion for summary judgment, and Ms. Scott appeals. For the following reasons, we affirm the judgment of the trial court.

I.

## ISSUES

We must decide whether:

(1)   LCG had actual or constructive notice of the pull cord's defect;

(2)   LCG is a common carrier, thereby subjecting it to a higher duty of care; and,

(3)   the existence of other alleged incidents of pull cord failure creates a genuine issue of material fact.

II.

## FACTS AND PROCEDURAL HISTORY

LCG owns and operates public transit buses in the city of Lafayette. The buses are visibly inspected by the drivers at each shift change, and a full physical maintenance inspection is performed every 12,000 miles. Specifically, the pull cords, the part at issue in this case, are inspected each day to ensure that the chime operates, and the cords are continually tested throughout the day when pulled by passengers. At the 12,000 mile inspection, the pull cords are inspected for "operation and

function." The mechanics physically pull on the cables and check the clasps holding the cable to ensure that the chime and light work. LCG does not test the amount of weight the pull cords can withstand.

In August 2006, Ms. Scott was a passenger on an LCG bus when she suffered an accident. Specifically, Ms. Scott was sitting at or near the front of the bus when another passenger pulled the cord to signal a stop. The cord came loose from the bus and struck Ms. Scott near her eye, requiring her to seek medical treatment. Ms. Scott testified that prior to the accident, she did not notice anything unusual about the bus or that it needed repairs. She also testified that she was unaware of any complaints concerning the pull cord on the bus. Following the accident, LCG examined the pull cord and repaired it. LCG's mechanic noted that the cord itself did not break and was not frayed. Instead, the pull cord came loose from the cable vice, which is similar to a clamp. The mechanic was able to place the bus back into service using the same cord.

After Ms. Scott's accident, LCG conducted an investigation and sought information about other accidents, if any, involving pull cords. Regina Melton, Transit Assistant Supervisor for LCG, recalled one incident in the previous twenty-six (26) years where a pull cord broke, but she could not remember the date or the circumstances surrounding the event. Gillig, the manufacturer of the bus Ms. Scott rode, reported no other incidents involving pull cords on any of its other buses. LCG's investigation revealed two other incidents where pull cords came loose, but those incidents occurred after Ms. Scott's accident and involved buses produced by a different manufacturer.

Ms. Scott filed suit against LCG seeking damages sustained as a result of the accident. LCG moved for summary judgment, asserting that Ms. Scott could

2

not prove actual or constructive notice of the defect pursuant to La.R.S. 9:2800. The trial court granted LCG's motion, and Ms. Scott appeals.

## III.

## LAW AND DISCUSSION

### Standard of Review

"When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the *de novo* standard of review, 'using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.'" *Gray v. Am. Nat. Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (*quoting Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

### Constructive Notice

To prevail on her claim, Ms. Scott must prove that LCG had actual or constructive notice of the alleged vice or defect with the pull cord. Here, Ms. Scott alleges that LCG had constructive notice.

Under La.R.S. 9:2800(D), "[c]onstructive notice shall mean the existence of facts which infer actual knowledge." "A municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by exercise of ordinary care . . . the municipal authority must have known of its existence, and . . .

had reasonable opportunity to guard the public from injury by remedy of the defect." *Ambrose v. City of New Iberia*, 08-1197, p. 2 (La.App. 3 Cir. 4/1/09), 11 So.3d 34, 37.

Passengers repeatedly used the pull cord in question on the day of Ms. Scott's accident. No one complained about the functionality of the cord at any time prior to Ms. Scott's accident. Indeed, Ms. Scott testified that she did not notice anything out of the ordinary with the bus, and she knew of no complaints about the pull cord. Nothing in the record indicates that LCG had constructive notice of the faulty pull cord.

Despite her own testimony that she observed nothing amiss with the LCG bus on the date of the accident, Ms. Scott alleges that LCG had a duty to do more. Specifically, she asserts that LCG had a duty to conduct tests to ensure that the pull cords on LCG buses could at least withstand a certain level of force or exertion. Ms. Scott contends that "[i]t is simply negligent for a common carrier to not test these cords and clamps to ensure that they can at least withstand a certain, standard, predetermined level of force or exertion." Ms. Scott fails to quantify, however, the amount of force or exertion a pull cord should be able to withstand. We disagree with Ms. Scott's reasoning.

Notably, this court has stated that "[l]ack of plan for periodic inspections does not impute constructive knowledge." *Laird v. City of Oakdale*, 04-767, p. 7 (La.App. 3 Cir. 11/10/04), 886 So.2d 1262, 1267. Moreover, the supreme court addressed this issue in detail in *Jones v. Hawkins*, 98-1259, 98-1288 (La. 3/19/99), 731 So.2d 216. In *Jones*, the plaintiffs sought to impose liability on the city of Shreveport for failing to possess a plan to inspect conditions at a particular intersection. The second circuit held that "the trial court committed manifest error

4

when it found a lack of notice of the defect on the City's part because 'the absence of any program on the city's part to inspect and discover the condition implies knowledge.'" *Id.* at 218. In *Jones*, the supreme court disagreed and explained:

> [W]e find we cannot agree with the second circuit's position that lack of a plan constitutes constructive knowledge. The definitions of actual and constructive knowledge are facially incompatible with the implication of knowledge from a lack of a plan to inspect. Actual knowledge has been defined as "knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities." Constructive knowledge is defined by La.R.S. 9:2800 as the existence of facts that infer actual knowledge. The absence of a plan of inspection in no way shows or implies that an employee of the appropriate public entity has actual knowledge of a dangerous defect or condition. Indeed, quite the opposite is true; in the absence of other facts, such as recorded complaints about a defect, lack of a plan implies that employees of the public entity have no actual knowledge of dangerous defects or conditions. Thus, holding that lack of a plan infers knowledge effectively eviscerates the notice requirement of La.R.S. 9:2800.

*Id.* at 220 (citations omitted).

Thus, the supreme court held that the city of Shreveport's duty to use reasonable care "does not encompass conducting periodic inspections." *Id.*

Applying *Jones* to the facts at hand, nothing on the bus indicated to LCG that a problem with the pull cord or clamp might exist. Passengers used the pull cord repeatedly before Ms. Scott's accident, and no one complained about its form or function. Thus, LCG's lack of a plan to further inspect the pull cord implies that LCG had no knowledge of a potential defect.

**Common Carrier**

Ms. Scott argues that La.R.S. 9:2800 does not apply and that LCG is subject to a higher standard of care as a common carrier. We disagree. Here, it is

clear that La.R.S. 9:2800 and La.Civ.Code art. 2317 control. The supreme court has held that "legislation is the superior source of law which custom cannot abrogate . . . ." *Unwired Telecom Corp. v. Parish of Calcasieu*, 03-732, p. 14 (La. 1/19/05), 903 So.2d 392, 403.

Louisiana Revised Statutes 9:2800 is a legislative enactment that controls the liability of state and political subdivisions such as LCG for liability "caused by the condition of things within its care and custody. . . ." Here, the "thing" at issue is a public bus. Just because a bus is involved, however, the claim against LCG, a political subdivision, must still be viewed subject to La.R.S. 9:2800. This argument lacks merit.

**Other Incidents of Pull Cord Failure**

To avoid summary judgment, Ms. Scott attempts to create a genuine issue of material fact by claiming that other bus pull cords failed. Ms. Scott references the testimony of Ms. Melton who recalled one other instance in the last twenty-six (26) years where a pull cord malfunctioned. Ms. Melton, however, was unable to recall when the incident occurred or the circumstances surrounding the event. Thus, it is plausible that the incident referenced by Ms. Melton actually occurred after Ms. Scott's accident. Similarly, the two other supposed pull cord malfunctions referenced in the record did, in fact, occur after Ms. Scott's accident. Moreover, the relation of those incidents to Ms. Scott's accident is tenuous at best because those pull cords were located inside buses produced by a different bus manufacturer, Blue Bird. Thus, a review of the facts reveals that the other incidents referenced by Ms. Scott do not raise a genuine issue of material fact to avoid summary judgment.

IV.

**<u>CONCLUSION</u>**

For the foregoing reasons, we affirm the judgment of the trial court.

Costs of this appeal are assessed against Ms. Scott.

**AFFIRMED.**