# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-768


**GEORGE JAGNEAUX**

**VERSUS**

**LAFAYETTE CITY-PARISH CONSOL. GOV'T PARKS & RECREATION**



**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20102328
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED.**




**D. C. Panagiotis**
**George J. Armbruster, III**
**Panagiotis & Armbruster, APLC**
**1540 W. Pinhook Road**
**Lafayette, Louisiana 70503**
**(337) 264-1516**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Lafayette City-Parish Consolidated Government**

**Joseph F. Garr, Jr.**
**Jason M. Welborn**
**Willard P. Schieffler**
**Lucas S. Colligan**
**Attorneys at Law**
**Post Office Box 2053**
**Lafayette, Louisiana 70502-2069**
**(337) 233-3185**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **George Jagneaux**

**CONERY, Judge.**

Plaintiff, George Jagneaux ("Mr. Jagneaux"), filed suit on April 10, 2010, against Lafayette City-Parish Consolidated Government Parks and Recreation Department ("LCG"). He claims that he was watching a baseball game and, as he was walking across the stands, he fell due to an allegedly loose bleacher seat at the ball park. Mr. Jagneaux filed suit claiming injury to his lower back.

Arceneaux Park is under the operational control of LCG through the Parks and Recreation Department ("Department"). Mr. Jagneaux argues that LCG, through the Department, should have had notice of the allegedly loose bleacher that caused his fall. Mr. Jagneaux further argues LCG had a duty to find the problem with the bleacher prior to the incident. The trial court granted LCG's motion for summary judgment and Mr. Jagneaux appeals the dismissal of his petition. For the following reasons, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2009, Mr. Jagneaux was attending his grandson's baseball game at Arceneaux Park in Broussard, Louisiana. He claims in his lawsuit and in his answers to interrogatories that he fell when the "bleachers gave way" as he was walking on the bleachers provided for spectators, and "he landed on top of the bleachers," sustaining an injury to his lower back.

According to the depositions introduced in evidence by LCG in support of its motion for summary judgment, it is the policy of the Department to perform a yearly physical inspection of each park in March or April before the beginning of youth baseball season in May. In this case, the Maintenance Supervisor of LCG,

Eddie Landry,[1] personally conducted the inspection of the bleachers at each park owned and operated by LCG, including Arceneaux Park, Field Two, the location where Mr. Jagneaux claims he fell.

Mr. Landry testified in his deposition that he found no problems with the bleachers on Field Two at Arceneaux Park that required any type of maintenance, and that he conducted the 2009 inspection of the bleachers on Field Two in the following manner:

> Pull the four seats, you'll go by each edge, there's eighteen (18) touches where you pick up on it and shake it and see if it's loose. Get on it, see if it rattles, and that would be one side. And then you walk across the back looking underneath because the bleachers are such you can see underneath, do the other side coming down. And then go across the front and you look under there on the metal ones, they're usually all okay. Occasionally, we'll have a crack in a weld on the aluminum one, and so you do that with each of the bleachers.

According to the deposition testimony of Earl Joseph Leger, Arceneaux Park Maintenance Supervisor, during the remainder of the year the Department employees conducted the usual maintenance of each park, which involved mowing the grass and maintaining the grounds. If an employee was informed of any problems by a park visitor or saw anything out of place with the bleachers during their usual routine, they would repair the problem or report the problem to a supervisor, who would then send an employee with the necessary skills to make the repairs.[2]

---

[1] The portion of the deposition transcript of Eddie Landry submitted into the record, erroneously identifies him as Kenny Albert Landry, Sr.

[2] Mr. Leger also testified that the Department began inspecting the bleachers once a month in approximately January 2012.

The depositions of two volunteers with the Broussard/Youngsville Youth Association ("Association") were also taken by Mr. Jagneaux.[3] One, Mr. Gary Goodwin, responded to Mr. Jagneaux after his fall and testified in his deposition that he only saw one bolt on the side of the bleacher at issue. Normally, there would be two bolts on each side. The Association sponsors the games at Arceneaux Park and is a separate legal entity from LCG.

Mr. Jagneaux also submitted in opposition to LCG's motion for summary judgment a document entitled, "LAFAYETTE YOUTH ASSOCIATION RECREATION AND PARKS – INJURY REPORT." Describing the incident, the report states, "He stepped on bleacher to get across. The seat was not bolted and caused him to fall across the bleachers. Has back, arm, shoulder & leg pain." The document was presumably written and signed by an individual who is identified as a Board Member of the Association, but his signature is unreadable.

Counsel for LCG argues that none of the depositions submitted into the record, as well as the deposition of the other unnamed volunteer mentioned, but not submitted into the record, contain any testimony that any of these individuals were aware of any problem with the bleacher at issue until after Mr. Jagneaux's fall. In addition, no evidence was presented to the trial court by Mr. Jagneaux that LCG had any notice of a problem with the bleachers until after his May 15, 2009 fall.

Mr. Jagneaux filed suit on April 5, 2010. LCG filed their motion for summary judgment on February 28, 2013, almost three years later, allowing adequate time for discovery. LCG argued that Mr. Jagneaux will be unable to meet the burden of proving at trial that LCG had actual or constructive notice of a defect

---

[3] However, of the two depositions taken by Mr. Jagneaux of the volunteers, only page 38 of Mr. Gary Goodwin's deposition was submitted into the record in opposition to LCG's motion for summary judgment.

3

in the bleachers required under the applicable state law, La.R.S. 9:2800. A hearing was held on March 25, 2013, after which the trial court ruled on the record, "The court finds that there is no evidence that the plaintiff has established either actual or constructive notice and will grant the motion for summary judgment." The trial court also signed a "JUDGMENT of DISMISSAL, WITH PREJUDICE," on March 25, 2013, from which Mr. Jagneaux now appeals.

## ASSIGNMENTS OF ERROR

All three of Mr. Jagneaux's assignments of error argue the trial court committed legal error in failing to find that LCG satisfied its "duty or legal obligation" to Mr. Jagneaux to "conduct reasonable inspections of the premises" in order to discover and remediate the defect in the bleachers. As will be addressed below these assignments of error are without merit.

## LAW AND DISCUSSION

Summary judgments are reviewed de novo, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Summary judgment is favored by the law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

In 1997 the legislature enacted La.Code Civ.P. art. 966(C)(2), which clarified the burden of proof in summary judgment proceedings. The initial burden of proof remains with the mover to show that no genuine issue of material fact

exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson v. Knights of Columbus, Council No. 5747,* 03-1533, p. 6 (La. 2/20/04), 866 So.2d 228, 233 (*citing Hardy v. Bowie,* 98-2821, (La. 9/8/99), 744 So.2d 606).

When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967(B). A fact is material when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith,* 639 So.2d at 751 (citations omitted) (alteration in original). In other words, a "material" fact is one that would matter on the trial on the merits. "Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Id.*

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.,* 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427.

Louisiana Civil Code Articles 2317 & 2317.1 require that in order to prevail on his claim against LCG, Mr. Jagneaux is required to prove, (1) LCG had custody of the bleachers in question; (2) That the bleachers at issue contained a defect that created an unreasonable risk of harm; (3) That the defect in the bleachers was the

5

cause of the harm; and (4) The custodian of the bleachers knew or should have known of the defect. *Ardoin v. Lewisburg Water System*, 07-180 (La.App. 3 Cir. 7/18/07), 963 So.2d 1049.

In addition, a case against a public entity, such as LCG, requires Mr. Jagneaux to prove that LCG had either actual or constructive notice of the alleged vice or defect in the bleachers, had a reasonable opportunity to repair the defect, and failed to do so pursuant to La.R.S. 9:2800(C) & (D) which state:

> C. [N]o person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

> D. Constructive notice shall mean the existence of facts which infer actual knowledge.

"A municipal authority is deemed to have constructive notice if the defect existed for such a period of time that by exercise of ordinary care ... the municipal authority must have known of its existence, and ... had reasonable opportunity to guard the public from injury by remedy of the defect." *Ambrose v. City of New Iberia,* 08-1197, p. 2 (La.App. 3 Cir. 4/1/09), 11 So.3d 34, 37.

In LCG's memorandum in support of its motion for summary judgment, LCG asked the trial court to assume, for the sake of the summary judgment motion only, that LCG was the custodian of the bleachers at Arceneaux Park and that there was a defect in the bleachers that caused Mr. Jagneaux's injury. LCG argues to this court, as they did to the trial court, that although Mr. Jagneaux's fall and the resulting injury occurred almost four years ago and suit was filed almost three years ago, that Mr. Jagneaux has failed to come forth with any evidence

demonstrating that LCG knew or should have known of the alleged defect, had an opportunity to repair the defect, and failed to do so.

LCG argues that the facts of this case mirror the facts in the recent case of *Scott v. Lafayette Consol. Gov't-Risk Mgmt. Div.*, 10-716 (La.App. 3 Cir. 12/8/10), 52 So.3d 1068. We agree. Ms. Scott was injured while riding a bus owned and operated by LCG when the chime pull cord came loose and hit her face near her eye. A panel of this court affirmed the trial court's summary judgment in favor of LCG, finding LCG had no actual or constructive notice of the pull cord's defect.

In *Scott*, each bus owned and operated by LGC was subject to a periodic check every 12,000 miles. The pull cords were subject to daily use by the passengers and a daily check was made by LCG to make sure the chime operated properly. In this case, the bleachers involved in Mr. Jagneaux's injury were subject to a yearly inspection in March or April, prior to the beginning of the youth baseball season in May. In addition, the bleachers were used on a regular basis by patrons of Arceneaux Park. LCG employees were present in the park for regular maintenance, and if any problems with the bleachers were found or reported, the necessary repairs were made.

The court in *Scott* also reiterated this circuit's position on the issue of the relationship between the lack of a policy or plan for periodic inspections by a public entity and constructive knowledge, stating that "[l]ack of plan for periodic inspections does not impute constructive knowledge." *Scott*, 52 So.3d at 1071 (quoting *Laird v. City of Oakdale*, 04-767, p.7 (La.App. 3 Cir. 11/10/04), 886 So.2d 1262, 1267).

The Louisiana Supreme Court opinion in *Jones v. Hawkins*, 98-1259, 98-1288 (La. 3/19/99), 731 So.2d 216, 220, is also cited in *Scott* and clearly defined

both actual and constructive knowledge and stated:

> [W]e find we cannot agree with the second circuit's position that lack of a plan constitutes constructive knowledge of the defect. The definitions of actual and constructive knowledge are facially incompatible with the implication of knowledge from a lack of a plan to inspect. Actual knowledge has been defined as "knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities." Constructive knowledge is defined by La. R.S. 9:2800 as the existence of facts that infer actual knowledge. The absence of a plan of inspection in no way shows or implies that an employee of the appropriate public entity has actual knowledge of a dangerous defect or condition. Indeed, quite the opposite is true; in the absence of other facts, such as recorded complaints about a defect, lack of a plan implies that employees of the public entity have no actual knowledge of dangerous defects or conditions. Thus, a holding that lack of a plan infers knowledge effectively eviscerates the notice requirement of La. R.S. 9:2800.

*Jones*, 731 So.2d at 220 (citations omitted).

During the discovery process, both Mr. Landry, the Maintenance Supervisor for LCG and the individual who conducted the 2009 physical periodic inspection of the bleachers on Field Two at Arceneaux Park, and Mr. Leger, Arceneaux Park Maintenance Supervisor, were deposed. The plaintiff also deposed two volunteers with the Association, one of whom, Mr. Goodwin, responded to Mr. Jagneaux after his fall. Counsel for LCG argues that the testimony of each individual deposed confirmed that they were unaware of any problems with the bleachers until after Mr. Jagneaux's fall on May 15, 2009, and there is nothing in the record to dispute this assertion.

The facts of this case are analogous to those in *Scott*. The *Jones* case affirmed that the absence of a plan of inspection in no way shows or implies actual knowledge of a defect as required by statute. The deposition testimony submitted by LCG clearly supports the trial court's ruling that LCG did not have either the

required actual or constructive notice of a defect in the bleacher plank prior to Mr. Jagneaux's May 15, 2009 fall.

Once LCG made a prima facie showing that its motion should be granted, the burden then shifted to Mr. Jagneaux, pursuant to La.Code Civ.P. art. 966(C)(2), to present evidence demonstrating that a material factual issue remains. "[T]he failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Hutchinson,* 866 So.2d at 233.

Louisiana Code of Civil Procedure Article 967(B) states:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Mr. Jagneaux argues that Mr. Goodwin's one page deposition testimony, submitted into the record, reflects that he looked under the opposite end of the bleacher plank after Mr. Jagneaux's fall and noted only one bolt instead of two. He also argues that Mr. Goodwin's testimony proves LCG had notice of the defect in the bleacher plank.

A picture of the metal bleacher plank showing only one bolt was attached as an exhibit to both Mr. Goodwin's and Mr. Landry's deposition testimony. Mr. Landry testified that he observed one bolt and nut still in place. Mr. Landry further testified that instead of replacing a bolt, it was the practice of LCG to weld the bleacher plank to the frame. Thus, the absence of a single nut and bolt discovered after Mr. Jagneaux's fall would not prove that LCG had notice of a defect, just as the loosening over time of the clamp that held the pull cord in *Scott* failed to prove notice necessary to defeat summary judgment in that case.

Based on our de novo review of the record, we conclude LCG did not have the requisite actual or constructive notice required by La.R.S. 9:2800(C) & (D), prior to Mr. Jagneaux's fall on May 15, 2009. Thus, Mr. Jagneaux will be unable to sustain his evidentiary burden at trial. The trial court's ruling granting summary judgment in favor of LCG was correct and adequately supported by the evidence submitted in support thereof.

## DISPOSITION

For the forgoing reasons, we affirm the trial court's judgment granting Lafayette City-Parish Government Parks and Recreation's motion for summary judgment, dismissing George Jagneaux's petition with prejudice. All costs of this appeal are assessed to Appellant George Jagneaux.

**AFFIRMED.**